## JOSEPH CHESLEY *versus* JOHN FROST.

A material alteration of a deed of land, while in possession of the grantee, is, *primâ facia*, fraudulent, and is presumed to have been made by the grantee himself. Neither he, nor one claiming under him, with notice of the alteration, and without having paid an adequate consideration for the land, can avail themselves of such deed in evidence.

Nor can they supply the want of it by parole testimony.

THIS was a writ of entry, wherein *Chesley* demanded five acres of land, situated in *Durham*, and counted upon his own seizin within twenty years, and upon a disseizin by the tenant.

At the trial upon the general issue, here, at the last term, it was admitted that the demandant had been seized within twenty years; but to prove that he had parted with the title, before the test of the writ, the tenant offered the following deeds in evidence:

1st. A deed, purporting to convey fifteen acres of land, so bounded as to include the demanded premises. This was from the demandant to one *Thomas Chesley*, dated Nov. 29, 1803, and recorded October 2, 1809.

2d. A deed of the same, from said *Thomas* to *Jonathan Locke*, dated March 27, 1809.

3d. A deed of release, by *Locke* to the tenant, dated April 3, 1809.

The execution of the two last deeds was admitted, but it was distinctly proved, by the subscribing witnesses, that the deed from *Chesley* to *Chesley*, when signed and delivered, was a grant of five acres only, and that while it continued in the possession of said *Thomas*, the grantee, and before its registry, the word five was altered to *fifteen*, the boundaries being such as to apply equally well to either quantity of land.

The demandant also proved that before *Thomas Chesley* made any conveyance of said land, the tenant, *Frost*, knew of the above alteration, and threatened to procure an indictment against said *Thomas* for the forgery. No evidence was produced by *Frost*, to show a payment by him or *Locke*, of an adequate consideration for the land, although the demandant offered to prove, that, after a prosecution had actu-

ally been instituted against said *Thomas*, for making the alteration, *Frost* agreed that it should be dropped, and *Locke*, as the agent of *Frost*, received from *Thomas* the second conveyance above mentioned, and executed the said deed of release to the tenant. And notwithstanding the land demanded was worth over 400 dollars, yet neither *Locke* nor *Frost* paid said *Thomas* one tenth part of that sum. It did not appear whether the possession taken under the deed preceded or followed the alteration.

A verdict was entered for the demandant, by consent, subject to the opinion of the court on the competency of the above evidence, and the validity of the defendant's title, according to the facts legally proved.

*Ichabod Bartlett & J. Smith*, for the demandant.

*Hale, & J. Mason*, for the tenant.

WOODBURY, J., delivered the opinion of the court.*

The admission made, and the evidence adduced, by the parties in this action, show the title of the demanded premises before the 29th of November, A. D. 1803, to have been vested in *Joseph Chesley*. He is, therefore, entitled to recover, unless *Frost* has produced competent testimony to shew that the interest of said *Joseph* was then, or afterwards, conveyed to *Thomas Chesley*, under whom he claims. To prove that the demandant did on that day part with all his interest in the premises, the defendant offered the deed of that date, described in the reported statement of the case. But the subscribing witnesses, called to show its execution, testified that the deed had since, while in grantee's custody, been altered from five to fifteen acres. Other testimony also was introduced, proving this alteration to have been known to *Frost* before any purchase by him or by *Locke:* and both these conveyances, for aught that appeared, were destitute of any adequate consideration.

It is essential, to a proper understanding of the principles which ought to govern this case, that the question presented

* RICHARDSON, C. J., having been of counsel, did not sit.

by the facts should be critically distinguished from other questions apparently connected.

The admissibility of the altered deed, as legal evidence to the jury, is, we apprehend, the principal point for our consideration. Because, if that deed be received, it shows the title to have passed from the demandant : and once proved to have passed, the better opinion seems to be, that no subsequent alteration, or cancelling of the conveyance, would revest the title.    2 *John.* 87.—4 *Cruise* 368.—6 *M. R.* 32, *Marshall* vs. *Fiske.*—8 *do.* 568.—6 *East* 148.—14 *do.* 431. The phraseology, also, of the 1st section of our statute, "declaring the mode of conveyance by deed,"(1) countenances this doctrine : and so, too, does the approved maxim, " *ut iisdem modis dissolvantur quibus constituantur.*"    1 *Cruise* 411.    But if that deed be rejected, no written testimony will remain of any transfer from the demandant ; and, consequently, he will be entitled to judgment unless the want of such written testimony can, under the circumstances of this case, be legally supplied by that which is parole.    Whether cancelling a deed, then, does or does not revest the title, is far from being the chief point in controversy : for, wherever the title to the demanded premises may *in fact* be, it is not our province to conjecture, but rather to decide where it appears to be, according to such testimony in the case as we have found competent and admissible.

(1) Statute of Feb. 10, 1791, 1 N. H. Laws 191.

That the original grantee, were he the defendant, could not use this deed in evidence, as at present circumstanced, we apprehend to be very obvious, both from principle and authority.

Had the alteration been proved to have happened by the misconduct of the grantor, or of a stranger, or by mistake, the grantee would have been guilty of no wrong, and consequently would deserve to suffer no inconvenience or punishment.

Such an alteration, according to the recent and best authorities, would not vitiate the deed.—See them collected in *Martindale* vs. *Follet, Ches., Sep.* 1817, *ante.*

But from the absence of all such testimony, connected with the positive proof that the alteration was made while the deed remained in the custody, and the land continued the property of the original grantee, the presumption of reason, as well as of law, is, that the alteration was fraudulent, and made by the grantee himself.   4 *D. & E.* 324, 331.— *Perkins, sec.* 122, 125.—*Shep. T.* 69.   It was also material, having been in a most essential part of the conveyance, and having greatly extended both its subject matter and value. *Martindale* vs. *Follet, supra.*

Such, then, being the character of this alteration, the authorities and principles are uniform, that render the deed wholly void, and inadmissible in evidence.

It seems, also, to be well settled, that, if in a case and from a cause like the present, a deed becomes inadmissible, no testimony of a parole character is competent to supply its absence.   The analogous precedents, on this point, were fully considered by us in the action before mentioned.   Indeed, the rule of evidence is more rigid, if possible, against the admission of parole testimony to aid the defects or remedy the want of a speciality : particularly of one to pass the title to real estate, than in cases like that of *Martindale* vs. *Follet,* of mere written agreements not made under seal. But between that and the present action, a distinction, supposed to favor the defendant, has been suggested, which arises from the nature of the contracts attempted to be proved by the two altered instruments.   There the note was offered as evidence of an *executory* contract ; here the deed, as evidence of an *executed* one.   Yet, if a difference exist between the fraudulent alteration or destruction of instruments evidencing contracts of those two descriptions, in respect to the effects of the alteration on the *title* of the parties to the *subject matter* of the contracts ; still the authorities are numerous and clear, that, as a rule of evidence, the *instruments,* in both cases, become alike void.    11 *Coke, Pigott's case.* 1 *Gal.* 69.—*Sanders on Uses* 259.—*Co. Litt.* 35, *note* 7. The elementary writers, and the adjudged cases, lay down the doctrine generally as to all instruments.   *Shep. T.* 69.

The reason, *in odium spoliatoris*, and to prevent tampering with written securities, on which the rule of law as to this object principally rests, apply, if possible, more strongly to debar deeds, fraudulently altered, from being admitted in evidence, than other writings that are not executed with so many solemnities, and are not the sacred assurances to which are entrusted the tenure and safety of most of the landed estates of the country.

The propriety of rejecting parole evidence, to supply the absence of writings destroyed by the wilful misconduct of the party in the case of executed contracts, is well illustrated by the rules of pleading deeds.

A deed, when pleaded, must be pleaded with a profert; or the profert excused by stating the absence of the deeds to be caused by some casualty, or by the misconduct of the opposite party. *Phillips' Evid.* 348.—3 *D. & E.* 151.—2 *Hen. Bl.* 259. But was a profert ever excused by shewing the deed altered or destroyed by the fraud of the person pleading it? Such being the law in relation to the actual perpetrator of the fraud, is there, under all the circumstances of the present case, any principle that can prevent its application to the present defendant? The title of *Frost* is derived from and through the offender, the original grantee: and unless a title in such grantee can be proved by competent evidence, the defendant's, which depends on that, must of course fall. In proving all derivative titles, such is the usual effect of a failure of any one link in the chain. But it has been contended that *Frost* himself, not having been the author of the fraudulent alteration, should be excused from its injurious consequences. Be it so. He is excused from all the *personal* consequences; the liability to an indictment for forgery. But consequences that are not personal, yet reach and taint the title, are inseparable from it; and, of course, accompany the title into any hands where it may chance to pass. There would be some plausibility in the objection, had the alteration been made after the conveyance to *Frost:* for acts done at that time, by the original grantee, would, as to *Frost*, resemble the acts of a stranger. Thus

the alteration of a promissory note by the payee, after it had been negotiated, and without the knowledge of the holder, ought not to prejudice the latter, because the payee at that time possessed, as to the holder, the character of a stranger. But if fraudulently altered, by the payee, before the negotiation, is not the note as void in the hands of a holder as in those of the payee himself? Nor would the situation of the holder of such a note be any worse than that of the holder of a note obtained by duress, or tainted by usury. Neither holder is without a remedy ; nor is a purchaser of real estate without one, if secured as he may be by covenants of warranty.

We are aware that the books furnish precedents, where the foulness of a transaction in its origin does not defeat the claims of subsequent parties in interest. Those precedents, however, were founded on frauds in law, as sales without an adequate consideration, &c. But we have discovered no such precedents, where the fraud consisted in the execution or alteration of the instrument containing the contract. Nor has any case occurred to us, in which a fraud of any kind was originally perpetrated, and a subsequent possessor of the contract or property was exonerated from the injurious consequences of the fraud, provided he possessed a full knowledge of its existence, and did not, as a purchaser or creditor, pay a full consideration. We choose to rest the decision, not on the general principle alone, but on that as connected with the circumstances last mentioned. For the case finds full knowledge in *Frost* of the alteration, and no proof whatever by him of the payment of an adequate price for the demanded premises. He must suffer, then, all the civil consequences of the original grantee's fraud. The writing, therefore, which purports to be a deed from *Joseph Chesley* to *Thomas Chesley*, is not, under the facts shewn, admissible in evidence ; and as its absence cannot be supplied by parole proof, the defendant has furnished no competent testimony that the title to the premises has ever passed from the demandant. Consequently judgment must be entered on the verdict.