2 | 255
67 | 271
67 | 273
2 | 255
71 | 123

## MOSES BULLEN *vs.* FREDERICK RUNNELS.

A deed, which describes the premises as "a certain part of a stream of water," and mentions the two termini of the "part," was held to pass a right to use the whole water which flows between those termini.

Whether all the interest in the soil beneath the water passes for every purpose, or only so far as is necessary for a due enjoyment of the water, yet the interest is of such a character, that it cannot be conveyed without a deed duly executed and recorded.

A bond between the original parties to the deed first mentioned, which bond was not recorded, nor known to a subsequent grantee of the premises, is inadmissible evidence to vary the construction of the deed, or to abridge the rights acquired under it.

Occupation of water within certain boundaries for twenty years, is presumptive evidence of an original grant of a right thus to use the water.

Where a right exists to use a certain quantity of water, a change in the mode and objects of the use, without increasing the quantity, is no violation of the right.

THIS was an action on the case for obstructing and diverting water from the mills of the plaintiff.

At the trial here, on the general issue, in September, A. D. 1819, it appeared in evidence, that the proprietors of Penacook, now Concord, in A. D. 1732, made a conveyance " of " the whole stream of Turkey river." All this stream, from its source to its junction with the Merrimack, was within their boundaries.

Under that grant mills were soon erected upon the margin of the stream, at a place where the plaintiff now owns mills and land, derived by conveyances from the original grantee " of the whole stream of Turkey river."

It further appeared, that the defendant owned land and mills, situated nearer the source of said river ; and, to turn his machinery, claimed a right to use all the water, which there flowed in said river.

In May, A. D. 1780, one *Flanders*, (under whom the plaintiff holds, by a subsequent conveyance, executed a deed) to one *Dimond*, of " a certain part of a stream on Turkey " river, so called : viz. beginning at the mouth of Great Tur-

" key pond, and so extending to the head of the lesser pond;" that within those termini *Dimond* soon erected mills, where the defendant's are now situated; and that for about forty years past *Dimond* and his grantees, including the defendant, have both claimed and used the water in said stream to turn their machinery.

The plaintiff objected, that by the deed to *Dimond* nothing passed; or if any thing passed, it was only a fractional portion of the water between the termini mentioned; and in aid of this construction, he offered in evidence a bond of the same date from *Dimond* and *Flanders*.

But the court, under an impression that something passed by the deed, and that the nature and extent of the interest which passed, could not be limited or varied in respect to the defendant by a writing, not acknowledged or recorded as a conveyance, nor its existence known to him, admitted the deed to go to the jury, and rejected the bond.

The plaintiff then offered evidence, that during the last twenty years he and his grantors had claimed and exercised the right to limit those, who owned the defendant's mills, in the use of the water, whenever it was wanted for the mills of the plaintiff; and on this point in the case was allowed, but declined, to read the bond before mentioned.

He also offered evidence, that till A. D. 1814, only a fulling and a saw mill were erected at the upper mill site, and that the defendant then built a grist mill, and raised his dam, and thus threw the water over a surface so much greater, that an unusual portion of it was evaporated, and altogether diverted from the lower mills. But concerning the increased height of the dam, and the use of more water than usual by the defendant, the evidence was contradictory; and the whole case was submitted to the jury, with directions, that the deed to *Dimond* passed a right to use all the water in Turkey river, within the termini named; that this right, however, might be restricted by a settled usage for twenty years; that if such an usage existed, and the defendant had recently broken its bounds, he was liable; but that the erection of new mills, or an alteration of the old

ones, without raising his dam, was not an injury for which the plaintiff could recover.

The jury returned a verdict for the defendant, subject to future advisement on the various questions arising in the case.

*J. Smith* and *M. Kent*, counsel for the plaintiff.

*S. Fletcher*, for the defendant.

WOODBURY, J., pronounced the opinion of the court.

The first object in this case is to settle the respective interests of these parties in the waters of Turkey river. The most conclusive evidence as to these interests was the occupation of the parties during twenty years. Because that is the common and peculiar mode of acquiring rights to the use of water(1); and because so long an occupation of a stream not navigable raises a presumption, that grants, now lost by time or accident, have passed between the parties in conformity to this occupation. 6 *East* 216.—1 *Camp. N. P.* 260, 463.—2 *Barn. & Ald.* 662, *Vooght vs. Winch.*—10 *John.* 236.—15 *ditto* 218.—3 *Caine's Rep.* 316.

On this point of the case the jury were properly instructed, and the plaintiff had leave to read the bond, which was rejected when offered to control the construction of the deed. But as the bond was not in fact read; as the plaintiff may have omitted it, relying upon the exception that it had before been improperly rejected; and as the jury may have grounded their verdict upon the other testimony, in consequence of the occupation not having been peaceable or uniform during twenty years, we shall examine the other evidence concerning the interests of these parties.

It is admitted, that by grant, or otherwise, *Flanders*, in A. D. 1780, possessed a right to use " the whole stream of " Turkey river" from its source to its junction with the Merrimack. It is proved, that he then executed a deed to *Dimond*, under whom the defendant claims, of " a certain " part" of that " stream"; " beginning at the mouth of Great " Turkey pond, and so extending to the head of the lesser " pond."

(1) 2 Bl. Com. 402.

33

The plaintiff contends, that no interest whatever passed by this description ; or if any, that it was only a right to use a fractional part of the water, which flowed in this stream between the two ponds ; that such a right could pass without a deed ; and consequently, that the bond between *Dimond* and *Flanders* was competent evidence to aid, if necessary, in putting the above construction upon what was conveyed by the deed.

If nothing passed by this deed, it is on the ground, either that the language used is altogether inappropriate and insufficient to describe the premises, or that the premises are so uncertain as to render the deed void.

But it is a settled rule of construction, that in deeds between individuals all doubtful expressions are to be taken in a sense most favorable to the grantee, and that every deed is, if possible, to be made to take effect. 1 *N. H. Rep.* 355, *Canning & ux. vs. Pinkham, and auths. there cited.* See, also, *Willes* 684.—*Popham* 166.—11 *Mass. Rep.* 493.—16 *John.* 172.

We are well aware of the elementary principle, that a grant of " water,"(1) or of " *aquam suam*,"(2) does not pass the soil beneath. Probably, because the soil beneath, not being named, and not being an incident to " water," cannot be considered as embraced by that word. So " water" cannot be demanded in a *precipe* ;(3) because it is " a moveable " wandering thing,"(4) and the same " water" demanded would not remain to be delivered upon the writ of possession.(5) So in *Surry vs. Pigot*, (*Popham* 167,) it is quaintly said, that an *ejectione firmæ* will not lie for " water ;" " because it is not *firma* sed *currit.*"

But notwithstanding these principles, whose correctness we are not now disposed to question, it seems to be equally well settled, that as " all, which the words contain, shall " pass by a grant,"(6) a grant of mere " water" is not void, but passes a right to use it for fishing ; or, in the words of Bacon, " passes both the water and piscary." *Bac. Ab. Grant, H.* 3.—*Co. Litt.* 4 b. 122 a.—*Plow. Com.* 154.—2 *Bl. Com.* 19.

(1) 2 Bl. Com. 19.
(2) Coke Litt. 4, b.

(3) Coke Litt. 122. a. note.
(4) 2 Bl. Com. 18.

(5) Yelv. 143, Challenor vs. Thomas.

(6) Plow. Com. 15.

Many cases exist of actions for disturbance in the use of water, where the title of the plaintiff was merely to the use of the water; but whether acquired by grant or occupation, and what were the words of the grant, do not appear. *Yelv.* 142.—*Viner Ab. Title " Watercourse."*

Probably the scarcity of cases on this point may arise from the circumstance, that occupation or prescription and not grants are in England the usual modes of acquiring title to the use of water;(1) and that the use of water for mills has not been so much encouraged there as here on account of their injury to agriculture by flowing, and to sawyers by sawing.(2)

(1) 2 Bl. Com. 402.—Vin. Ab. Supra. B.

(2) Rees' Cyclopedia, " Mills."

But if here, in a grant of " water," there would pass a right to use it for no purpose except fishing; yet the language in this deed describes something more than the word " water" does. It is " a certain part of a stream," named and bounded; and it has always been held even in England, that, where the language of the deed indicates some natural or fixed boundary to the water, there not only passes a right to fish in the water; but also a right to use it for other appropriate purposes. *Vaughn.* 108, *Price vs. Braham.— Coke Litt.* 5 *a. b.—Plow.* 154, 161.—*Bac. Grant. H.* 3.

The examples under this head are grants of " a pool," or " a gulph";(3) and surely such grants are no more comprehensive in their nature than grants of a " stream," or of " a part" of a " river."(4) In such cases the intention of the parties seems to extend beyond the mere water then in being, and to include at least the perpetual use of the water within the boundaries mentioned.

(3) Shep. T. 95.

(4) Plow. Com. 157.

The next objection relates to the uncertainty of the description in the deed. But by " a certain part of a stream" we do not apprehend, that the grantor meant some fractional part of the whole water, which run in the stream, and, not having defined the extent of that part, that the deed must be adjudged void for a patent ambiguity.(5)

(5) 1 Phillips' Ev, 417–8 b.

On the contrary, as the grantor owned the whole length of the river, we think that by " a certain part" he intended to convey a part of the whole length; and that this part of

the whole length is defined and made " certain," by describing it, as " beginning at the mouth of Great Turkey pond, " and so extending to the head of the lesser pond." All that part of the river, which flows between those boundaries, was intended to be conveyed. This construction gives operation to the deed; is consistent with its language; and accords well enough with the nature of the transaction.

In A. D. 1780, in a period of perilous war, such a privilege would be conveyed with less reluctance and at a smaller price; the actual use for water was, from thinness of population, and the absence of most manufacturing machinery, very limited; and from physical causes the quantity of it in this river was then probably much greater. 4 *Mass. Rep.* 561.—1 *Williams' Vermont* 62, 75, & *Apx.*—*M'Kenzie's Voyages* 432.

Hence, without any imputation of folly or blindness, the grantor might, for a moderate compensation, convey the use of the whole river at a place some distance above his own mills.

The next question arises from the rejection of the bond, when offered in evidence to vary this construction of the deed. But, under these views, there was no latent ambiguity, which it might have been competent to explain. 1 *Phil. Ev.* 410.—5 *Coke* 68 *b. Lord Cheney's case.*

As between the original parties, however, the bond being a specialty, might have been competent evidence to contradict the deed. And bonds of defeazance and leases under seven years have sometimes been held competent evidence against deeds, even in suits by third persons. Yet the present bond partook of neither of these characters; and this action is not between the original parties to that bond. The controling principle on this point is, that property, which passes by a deed of conveyance, and which, from its nature, cannot pass by parol, or by a writing of less solemnity than a deed, can be divested or affected only by a deed of conveyance, or a writing equally solemn. 1 *N. H. Rep.* 147, *and auths. there cited.*—*Hetley* 138.—*Vin. Ab. " Faits,"* X. 2.

To the application of this principle the plaintiff's first objection is, that though a right to use the water within the termini named may have passed by the deed under consideration; yet a sufficient interest did not pass with this right to render a conveyance by deed necessary, and hence the bond is competent evidence to modify the right. But in grants of this kind some interest in the soil, covered by the water, must pass to enable the grantee to enjoy his grant. As a grant of a right of way passes a sufficient interest in the soil to enable the grantee to build and use the road.(1) A grant of standing trees passes such an interest in the soil as is necessary to their growth and severance. *Cr. Ja.* 487.—1 *Inst.* 53 *a.*—*Burr.* 1824.—4 *Mass. Rep.* 266.—1 *Cruise* 64.—*Com. Di.* " *Grant*" *E.* 5. And so does a grant of standing grass. 2 *Strange* 874.—4 *D. & E.* 671-5. —6 *East* 602.—1 *John.* 267. By the civil law, likewise, a grant of any easement or " service," under which was classed the use of streams of water, a right to the soil passed so far as was necessary to the enjoyment of the service.(2)

According to many authorities, however, no interest in the soil for any other purpose would seem to pass. *Vid. Supra.* and 1 *Burr.* 143.—22 *Edw. IVth,* 8*th plea,* 24*th page.*—1 *Connec. Rep.* 103.—15 *John,* 447.—2 *Hen. Bl.* 527.—*Com. Di.* " *Chemin*" *A.* 2.—*Popham* 170.—1 *Maul. & Selw.* 659. —*Livingston's Answer as to the Batture* 200. While, by other authorities, the grant of a " pool," a " gulph," &c. would seem to pass the whole soil beneath. *Shep.* 95-7.—*Co. Litt.* 122 *a.*—*Plow.* 154 *a.*—2 *Salk.* 637.—1 *D. & E.* 360.

But whichever of these positions may be most correct, a sufficient interest in the soil passes to require a deed for its conveyance; since these interests belong to the realty; are inseparable from it, and were in this instance to continue forever. By the civil law services of this kind were called " real;" and had most of the incidents to real estate. *Domat b.* 1, *t.* 12, *s.* 1.—*Justin. Inst.* 89 *note,* 467.

In England they are enumerated as the subjects to be conveyed by deed. *Shep. T.* 230.—*Perk. Con. sec.* 61.— 2 *Bl. Com.* 18, 42, 317, 379, 382.—*Co. Litt.* 122 *a.*—2 *Pierre*

(1) 1 N. H. Rep. 16, Makepeace vs. Warden et al.

(2) Domat b. 1, t. 1, s. 1.— Bracton B. 4.

Bullen
vs.
Runnels.

*Wms.* 27, *Drybutter vs. Bartholomew.*—4 *East* 107, *Fentiman vs. Smith.* So in Pennsylvania ; (2 *Binney* 490, *Carson vs. Blount.*) So in New-York ; (4 *John.* 81, *Thompson vs. Gregory.*) A widow, also, may be endowed of a third part of a " gulph ;" (11 *Edw. III.*) and she may be endowed in some kinds of fisheries ; (*Roberts' Frauds* 127.) A *precipe* lies for a gulph or a pool, (*Yelv.* 143) ; and a right to fish in certain water and its appurtenances is real estate, so as to be liable for poor rates. (1 *Maul. & Selw.* 652, *King vs. Ellis.*) In *Fitz. Na. Br.* 191, it is said, " a writ of entry *sur disseisin,* " made unto his ancestors of a *stream,* lieth," &c.

(1) 1 N. H.
Laws 191.

These principles of the common law are enforced with some additional requisites by our statutes.(1) For they not only require some writing as evidence of any contract for the " sale of lands, tenements, or hereditaments or any interest in or concerning them ; " but that every conveyance of any such interest, except a lease not over seven years, shall be invalid as to third persons, unless attested by two witnesses, acknowledged before a magistrate and "recorded at length in the registry of deeds."

The interest, which passed in this case, was clearly in lands, tenements or hereditaments ; and in the humblest view of it amounted to more than is defined in the books to constitute a "tenement." 4 *D. & E.* 673.—1 *D. & E.* 360.—2 *Bl. Co.* 17, 18.—*Com. Di.* "*Grant*" *E.* 1.—*Chipman's Rep.* 167.

A conveyance by deed was, therefore, necessary. Hence the interest, which passed by the deed to *Dimond,* could not be varied or diminished in respect to this defendant by a bond, whose existence does not appear to have been known to him, and which, independent of its informality as a conveyance, was neither acknowledged nor recorded.

The only remaining point is the direction to the jury, that any change by the defendant in the mode and object of using the water within his own boundaries, was not actionable, unless he thereby prevented the usual quantity from running to the mills below. Changes of this kind, by introducing new or rival machinery, are in general *damnum*

*absque injuria :* and it is doubtless fortunate for the public that there is no check upon them, unless they actually divert a part of the water from those below, or unless they are in violation of express prohibitions in deeds. 1 *Barn. & Ald.* 258, *Saunders vs. Newman.*—15 *Mass. Rep.* 313, *Bigelow et al. vs. Battle et al.*—15 *John.* 218.—3 *Caines* 313.—(17 *John.* 320.)

*Judgment on the verdict.*