## WATKINS & a. *vs.* PECK.

The adverse or exclusive use of water flowing through an aqueduct, by the owners and occupants of a house, for the term of twenty years, furnishes presumptive evidence of a grant, from the owner of the land through which it is brought, of a right to have it flow in the manner it has been accustomed to do for that period.

If one has enjoyed an easement in the land of another for more than twenty years, but, within the term of twenty years from the time the use first commenced, he applied to the owner to purchase the right; this, if unexplained, is evidence that his enjoyment is not adverse, and no presumption of a grant can arise from the use during that time.

But if such easement has been possessed and used for the term of twenty years, in a manner to furnish evidence of an adverse enjoyment, and raise the presumption of a grant; and the owner after the expiration of that term denies the right, and there is thereupon a negotiation for a purchase, and an agreement, which is not perfected; such attempt to purchase will not preclude the party from relying upon the presumption of a grant by reason of the previous adverse enjoyment.

A party cannot be charged with notice of an advertisement, in a newspaper, merely because he is a subscriber to the paper.

In order to estop a party from setting up a title to property, upon the ground that he has permitted another to sell it as his own, without making any objection, it must clearly appear that the sale was made with full knowledge on his part. It is not enough that he has notice that another is proposing to sell his property, and that he afterwards does sell it.

A declaration, in the presence of a party, denying his title, and a proposition in his hearing to make a sale inconsistent with his rights, of which he takes no notice, will not preclude him from afterwards insisting upon his title,—no sale inconsistent with his title having in fact been made.

To estop one from asserting a title, by reason of his presence at a sale by another without having made any objection, the subject matter of the sale must be something in which his interest is direct and immediate. If there be an intermediate interest, on which his is dependent, he cannot be estopped. Thus if a person who is entitled to have the water flow to his house in a certain manner, by agreement permits others to take and use a part of it, their presence at a sale which is inconsistent with his rights will not estop them from having the use of the water, he not having been present.

Repairs made upon an aqueduct, which is laid through the land of another, cannot be regarded as in the nature of rent, or as an acknowledgment that the easement is held at the pleasure of the owner of the land, without some other evidence tending to show an agreement to that effect. Nor will the fact that the owner of the land takes part of the water from the aqueduct, show that the use by the party who takes the rest, and repairs, is merely permissive. But it may be evidence that the party repairing takes the water, and the right to enter and repair,

upon the condition of furnishing the owner of the land with a portion of the water; and the performance of the condition may be essential to the continuance of the right.

A grant upon condition may be presumed from use and enjoyment for the term of twenty years adversely, and the performance of a duty connected with the easement.

A grant cannot be presumed where the party who must have made the grant, if one existed, was at the time incapable of making a grant.

A guardian is not authorized to grant an easement in the land of his ward, extending beyond the limit of the guardianship; and such grant cannot therefore be presumed from adverse possession and use.

The water of a spring had been carried, by an aqueduct, through the land of A. to the house of B., for the term of twenty years, and more, under such circumstances as to raise a presumption of a grant to B., or those whose estate he had. Within twenty years B. permitted C. and D. to convey a portion of the water to their houses.—*Held,* that although C. and D. had not had the use of the water long enough to raise a presumption of a grant from A., or those under whom he held, to them, yet that their rights to it were derived from B., and that A., therefore, could not lawfully deprive them of it.

In Equity.   The bill alleged that the plaintiffs, George Watkins, William Buffum, Walton Mead, William Gage, and Sarah S. Bellows, were owners and occupants, severally, of messuages in Walpole village ;—that they, and those under whom they claim, have for forty years been entitled to the water running in a certain aqueduct, from the farm of the late Benjamin Bellows, across the main street in the village, and across a piece of land now owned by the defendant, Philip Peck, with an old dwelling-house thereon, to the messuages of the plaintiffs ; subject to the incumbrance of supplying the occupant of said dwelling-house, free of expense, so much water as his family should need ; and that for forty years, entirely at their own expense, they have repaired the aqueduct, and thereby conveyed water, and supplied the occupants of the dwelling-house, and constantly used the whole residue of the water at their messuages, as suited their convenience, without hindrance from any person ;—that during the whole of that time the water had been brought on the account and expense of the plaintiffs and their grantors, without expense to the defendant or any occupant of said

dwelling-house, who have been at all times indemnified from the expense ; but that the defendant had given out that he would not permit the water to be conducted across his premises as heretofore, &c., and was preparing to divert the water, and intended to destroy the pipe, and to hinder the plaintiffs from coming on his premises to repair, as they had done heretofore, &c.

The defendant denied all belief that the plaintiffs, or either of them, or those under whom they claim, had been, for more than forty years past, or for any time past, entitled to the water, except by the indulgence for the time being of the owners of the tract of land now owned by him ;—denied that either of the plaintiffs, or their grantors, made the aqueduct first laid down between the spring and the lot now owned by him, and any knowledge that either or any of them had, at their own expense, at any time made, maintained or repaired it.

He alleged that he purchased the premises at auction, from the widow and heirs of William Cochran, December 18, 1838 ;—that in the advertisement, printed in the New-Hampshire Sentinel, and also posted in the village, they were offered for sale, together with one half of the Gen. Bellows spring ;—that he supposed that all the water running in the aqueduct would pass with the premises ;—that Mr. Lyman, the agent of the owners, being present, said, in substance, that no others had a claim to it ;—that the plaintiffs, or two of them at least, were present and asserted no claim ;— that he gave a much larger price on this account ;—and that since that time the plaintiffs, or most of them, agreed to purchase of the defendant the right to use this water, but have failed to fulfil their agreement.

He admitted that a pipe ran from his penstock to the house of Mrs. S. S. Bellows, and from that place to others of the plaintiffs ; and another pipe from his penstock to Buffum's ; and that the proportion of water which run from his penstock to those places, at the time of filing the bill, was about one third of the whole.

The plaintiffs filed a general replication.

It appeared from the evidence, that on the 30th of March, 1795, Benjamin Bellows conveyed to Amasa Allen and David Stevens the privilege of a certain spring of water, with liberty to carry the same by logs through his land, and to repair when necessary, &c., reserving what he should stand in need of, for the use of a family, in the house in which he dwelt.

The water had been carried from the house of Bellows to the house of Allen, and to that of Stevens, a year or two previous to this conveyance. The branch to Allen's took half of the water, and is not involved in the controversy in this case.

On the second of July, 1795, Stevens conveyed the lot upon which his house stood, to T. & I. Redington, and quit-claimed to them all his right and title to the spring and the water works.

T. & I. Redington conveyed the lot to David Stone, March 13, 1798, and by another deed, of April 11, 1798, quitclaimed their right to the spring and the water-course, for the purpose of supplying the house with water, &c.

Through several mesne conveyances the title to the lot came to William Cochran, March 7, 1812, but in none of these was the spring or water particularly mentioned.

It was further in evidence, that about 1796, or 1797, Nicanor Townsley moved into the house now owned by Mrs. Sarah S. Bellows, one of the plaintiffs, and that within a year or two afterwards, logs were laid by him and Joseph Wells, who then occupied the house now owned by Mead, another of the plaintiffs, and the water was thus brought from the Stevens house to those houses, where it has continued to run ever since, excepting when the aqueduct has been out of repair. There was no evidence of the particular terms of the agreement under which this was done.

Prior to 1812, an aqueduct was laid from the house occupied by Townsley to that now occupied by Gage, who is

one of the plaintiffs; and about that time it was extended from there to the tenement now occupied by Watkins, another plaintiff.

An aqueduct was laid, also, subsequent to 1812, from the Stevens house to that occupied by Buffum, who was also one of the plaintiffs, but whose death is now suggested on the record. The time when this was done did not distinctly appear.

After the water was thus brought from the Stevens house, those who had the use of it made repairs upon the aqueduct between that house and the spring, at divers times, but it did not appear that the occupants of that house contributed any thing to those repairs.

The matter was in this situation at the death of Cochran, which occurred in 1820, or 1821. He left four minor children, one of whom had not attained the age of twenty-one when the Stevens lot was sold to the defendant, by her co-heirs, and her guardian, in December, 1838.

After the death of Cochran this lot was for a time in the charge of Abel Bellows, and in 1829, the aqueduct being out of repair, it was concluded, by some of those interested, to relay it from the spring to the Stevens house, with stone pipes. There was evidence that A. Bellows at that time declared that those who did not contribute towards the expense of this would lose their chance to the water; but it did not appear that any one of those interested had declined to contribute, and all those who had the use of water beyond the Stevens house paid such proportion as was agreed among themselves. The persons who were interested in the Allen branch paid half of the expense, so far as they were jointly interested. The heirs of Cochran contributed nothing, except half the expense of constructing a cistern at that place. After the stone pipes were laid, the aqueduct was kept in repair, as before, by those who took the water from the Stevens house; those interested in the other branch contributing so far as

they were interested. There was no evidence that the owners or occupants of that lot had paid any thing further towards the repairs, from the time that Townsley and Wells took the water from that place.

There was evidence tending to show that it was understood that those who caused the water to be carried onward from the Stevens house were to leave enough for the use of that house. No rent was paid, unless the repairs are to be so regarded.

The defendant purchased at auction. Notice of the sale was given in the New-Hampshire Sentinel, to which Mrs. Bellows and Gage were subscribers. The property was described as a commodious dwelling-house, &c., with about one acre of land in Walpole Village, "together with one half of the Gen. Bellows spring, so called."

At the auction there was conversation about the right to the water. Abel Bellows stated that he supposed the house was entitled to half of the spring, but that a number of persons had for many years brought the water to the house, free of expense, and enjoyed the waste water; whether they could hold by possession, he could not say. Whereupon Mr. Lyman, who was agent for making the sale, said that the persons who had the waste water could not hold it by possession, as paying the expense of bringing the water would be considered as rent. But being asked if he would give a deed of warranty of one half the spring, he replied that he would give a deed of all the interest the heirs had in it, and no more.

Some of the plaintiffs were present at the sale, but took no part in the conversation about the spring.

The deed to the defendant conveyed all the right of Cochran's heirs to the lot and the water of the spring.

After this conveyance, the defendant claimed the right to deprive the plaintiffs of the water, and threatened to do so unless they would pay him for it; and there was a negotiation between the parties for a purchase; and the plaintiffs at

one time concluded to agree to his terms, and take a convey-
ance, but the matter was finally abandoned.

*W. Bradley*, (of Vt.) & *Chamberlain*, for the plaintiff, .
contended, that it was not necessary that the positions of the
bill should be proved precisely, to their fullest extent.   It
was enough that sufficient was proved to entitle the plain-
tiffs, in some measure, to the relief asked ;—nor was it ne-
cessary that it should be proved in the form stated, it being
sufficient if it were substantially proven.   11 *Vt. Rep.* 290,
*McConnell* vs. *McConnell.*—

That it appeared that the plaintiffs had openly and quietly
enjoyed the water, repairing the pipe of the main branch of
the aqueduct from the spring to the land of the defendant,
and making some of it anew, and claiming a right to the
water, for more than twenty years ; and some of them, (as
the occupiers of the Sarah S. Bellows, and Mead houses,)
for more than forty years, either of which, on a trial at law,
would be conclusive evidence of title.   3 *Kent's Com.* 356 ;
*and cases collected in Cowen's notes to Phil. Ev.* 380,
383 ; 3 *Mason* 272, *Hazard* vs. *Robinson.*—

That at the auction sale, in 1838, when the defendant pur-
chased, Abel Bellows stated, in the presence of those present,
that the surplus water had always been brought free of charge
by other individuals, alluding to the plaintiffs and their grant-
ors, but whether they could hold it by possession, he could
not say, and thereupon Lyman, the agent of the owners, said
they could not so hold it, for the paying the expense of
bringing the water would be considered as rent; and this
was the extent of the denial of the plaintiff's right ;—but
they contended that this condition of making and repairing
partook of no quality of rent.   2 *Aiken's R.* 266, *Mitchell*
vs. *Walker*, cited 2 *Cowen's Phil.* 383 ;—that it was the
consent, indulgence or permission of the owner, upon which
the conclusive doctrine of presumption rested.   *Hilary* vs.
*Walker*, 12 *Ves.* 265.—

That if it should be said that the heirs of Cochran, from whom the defendant purchased, were under age at the time of his death, in 1820, and that one of them continued so until the sale to the defendant, in 1838, it might be answered, that, independent of the care of guardians, it was decided in *Tyler* vs. *Williamson*, 4 *Mason* 402, that the prescription would not be affected by that circumstance, for an extinguishment binding on infants may be presumed as well as a grant.—

That with regard to the presence of some of the plaintiffs at the sale, when the conversation before stated was had; parties were not to be concluded, as to inferences of law, because they did not happen to argue, at a vendue, a question of jurisprudence, viz: whether their possession and repairs amounted to a tenancy, or a conditional title. *Lepree* vs. *Robinson*, *Litt. Sel. Cas.* 22–3; and besides, it did not appear that this conversation was directed to either of the parties, or was heard by any of them, (*Moore* vs. *Smith*, 14 *Serg. & Rawle* 388–393,) and it was not pretended that Mrs. Bellows, who takes the whole surplus in the first instance, was present at all.—

That with regard to the attempt to purchase of the defendant, it was to be observed that the plaintiffs were endeavoring to obtain a greater right than the surplus water, and have their title extended to the spring;—that the defendant declined, and threatened that if not purchased by morning they should be embarrassed with a new purchaser;—and that under these circumstances, whatever was done was clearly, 1st, an endeavor to compromise a pretended claim, and 2d, an arrangement under which no title or possession was taken, or consideration, or rent paid;—that it could not be enforced, and came within the authority of *Jackson* vs. *Southampton*, 2 *Johns. Cas.* 223; *Jackson* vs. *Cuerden*, *Ditto* 353; *Shaw* vs. *Spear*, 7 *Wend.* 304, 401. In the case of *Mitchell* vs. *Walker*, 2 *Aik. ub. sup.*, the party had gone so far as to take a lease, and secure the rent.—

Watkins v. Peck.

That the present bill was a proper mode of enforcing the plaintiff's rights, 2 *Story's Eq.* 204, 207 ; *Hopkins' Ch. R.* 416, *Reed* vs. *Gifford ; 2 Swanst.* 336, *Wynstanley* vs. *Lee ;* 1 *Rolle's Abr.* 380 ; *Com. Dig., Chancery, D.,* 10 ; and that the measure of the plaintiff's enjoyment was to be taken in the particular way in which they have possessed and enjoyed it for twenty.years ; and they were entitled to be quieted in that possession, in the mode, and to the extent commensurate with the right, as it has been acquired and defined by the enjoyment. 3 *Kent's Com.* 359, (*1st Ed.*) 448.

*S. Hale, & Vose,* for the defendant. The defendant insists that the use of the water was merely permissive, not adverse ; was without claim or supposition of right, and could be determined at will.

Stevens, (under whom the defendant claims,) laid the first pipes from the spring to his house. It was not until sometime afterwards that water was permitted to be taken from his premises. If the plaintiffs have any right, which is denied, that right must be derived from Stevens, or his assigns. They cannot dispute his or their title. They must show a right to take water from the defendant's land, for the penstock is on his land.

The testimony is inconsistent with any claim of right on the part of the plaintiffs, and with any supposition, on their part, that they had a right. *Angell on Adv. Enjoyment* 44, 47 ; 14 *Mass.* 53, *Gayetty* vs. *Bethune ;* 2 *Hilliard Abr.* 54.

There is evidence that Abel Bellows, who had the care of the Stevens place after the death of Cochran, declared that those who would not join in laying stone pipes, would lose their chance, and no one claimed a right. The application of Watkins, one of the plaintiffs, to procure a title, shows he considered he had no title. The bargain made at Mrs. Sarah Bellows' for a purchase, is still stronger testimony.

If a man has a right by deed, it is good, though he at a particular time does not know he has a deed. He cannot acquire or have a right by use without knowing or supposing he has it; certainly not, if he supposes or acts as if he had no right. They talked about buying a right, and made a bargain for it, which are facts against them stronger than any presumption in their favor.

The talk and the bargain were not to buy peace, for there had been no war, and the plaintiffs made no claim nor assertion of right.

While the Stevens lot was owned by Cochran's heirs, no title could accrue or be perfected. His youngest child, Elizabeth, was a minor when the conveyance was made to Peck. When the stone pipes were laid, no title had accrued, and since then there has been disability. Statute disability is not necessary. Not living on the premises, not suffering personal inconvenience, is enough to rebut a presumption from use. 2 *Saund.* 175, *notes.*

No presumption can be raised while no injury is suffered by the owner himself. If he permits a neighbor to enjoy what he does not need at the time, the neighbor cannot convert benevolence into right. The owner may resume, whenever he feels the want or inclination. No want was felt until the defendant took possession as owner, and of course until then there was no occasion to forbid or bring an action. 3 *Taunt.* 99, *Cooper* vs. *Barber.*

All the complainants must have seen the advertisement. Two took the Sentinel, and two, certainly, were present at the auction. Standing by, silent, at a sale, even in case of a vested right, is a relinquishment of that right. 1 *Story's Eq.* 376. Being afterwards told that long use, unexplained, may give right, is not like discovering a deed. They cannot plead ignorance of their right, for they could have no right if they were ignorant of it. Even if they had discovered a deed, it would not have availed against an innocent purchaser. These facts are also decisive to rebut a presumption.

The use of the water was not uniform. Much more was used on the Cochran lot a short time ago, than when the sale was made to Peck. The owner or occupant used all he wanted at any time. He wants all now.

Prescription must be certain. *Com. Dig.*, *title Prescription*.

The obligation to repair from the spring to Peck's is inconsistent with a perpetual right. *Angell on Water Courses* 47.

The court, on reading the testimony, cannot presume that there had ever been a grant.

Payment of the expenses of repairs is equivalent to the payment of rent, so far as to prevent the plaintiffs from acquiring a right by possession.

PARKER, C. J. The plaintiffs set up a right to have the water run from a spring on land formerly owned by Benjamin Bellows, through the land of the defendant, to the several houses occupied by them, and to keep in repair an aqueduct for that purpose. They produce no title deeds granting to them the waters of the spring, or the right of conveying it through the land of others; but they rely upon an uninterrupted usage, of themselves and those whose estates they have, to take it in a certain manner, for the term of more than twenty years, as evidence of a grant, or title; and they claim the right to continue to use the water, in the manner they have been accustomed to do for that period.

The adverse, or exclusive use of water, in a particular manner, for the term of twenty years, furnishes presumptive evidence of a grant. *2 N. H. Rep.* 257, *Bullen* vs. *Runnels*. And this is as true in relation to water flowing through an aqueduct, for use at a house, by the occupants, as it is in relation to the water of a river, used for propelling machinery.

The main question presented by the case is, therefore, whether the plaintiffs have shown such an adverse use, as entitles them to the benefit of the principle.

The evidence is clear that all the plaintiffs, or those under whom they claim, and whose estates they hold, have enjoyed, at their respective houses, the use of the water of this spring, for more than twenty years before this controversy commenced; and that it has, during all the time they have so used it, been brought through the land formerly owned by Stevens, and now held by the defendant. To the houses of some of the plaintiffs it had thus flowed for the term of near forty years. And during all that time those who have thus received the use of it after it passed the lot now owned by the defendant, have exercised the right of repairing the aqueduct, not only from that lot to their respective residences, but also in that lot, and from thence to the spring from which it is taken.

During all that time the right of the plaintiffs, and those under whom they hold their lands, thus to take and use the water, has, so far as appears, not been contested by any one; nor is there any express evidence of any permission asked within the time, or of any sum paid for the use, or any acknowledgement that the use was at the pleasure of those through whose land the aqueduct passed.

These facts, if they stood alone, would furnish abundant evidence of title in the plaintiffs to take and use the water as they, and others whose estates they hold, have been accustomed to do for such period, and to ask the aid of the court. 2 *Vernon* 390; 2 *Cowen's Phil. Ev.* 381, *citing Gilb. Eq. R.* 4, *&c.*; 2 *Story's Eq.* 204, 207.

But there are other circumstances to be considered, upon which the defendant relies, as showing that the use was not in fact adverse to the right he now sets up in the owners of the Stevens lot, to control the use of the water at their pleasure.

It appears that in 1829 the aqueduct was out of repair, and measures were taken to relay it in a more durable manner. Abel Bellows then had charge of the Stevens estate, and he declared that those who did not join in making the

repairs would lose their chance to have the water. But this does not show an assertion of a right to deprive them of it at the pleasure of those of whose estate he then had the charge. It was for the interest of that estate to have the repairs made, as the water there used was obtained by means of the aqueduct; and it seems therefore rather a call upon those who were supposed to be bound to make the repairs, and who of course had the right so to do, to perform a duty from which the Stevens estate, as well as themselves, would derive a benefit. If the testimony upon the whole shows such a use as to be evidence of a grant of the right to take the water on condition of keeping the aqueduct in repair, and permitting the occupants of the Stevens estate to take so much as they needed, or have been accustomed to do, then Mr. Bellows well declared the law, that those who did not comply with the condition upon which they held the right, would lose the right itself.

It appears further, that during the time Bellows thus had charge of the estate for the heirs, the plaintiff Watkins applied to him to get a conveyance of a right to use the water. It does not appear that he admitted that he had no title, but the water was conveyed to his house somewhere from 1810 to 1816; and if this transaction took place within the term of twenty years after, it would be evidence of an admission that he at that time had no title, and thus might bind him, if he alone were concerned, on the ground that there was no sufficient evidence that he had had the use of the water adversely for the term of twenty years. If he had enjoyed the use adversely for a period of twenty years before the application, the case would be different, as we shall see hereafter. But none of the other plaintiffs appear to have had any connection with that application, and Watkins derives his use of the water not immediately from the land of the defendant, but through other persons, who have had the use longer, and whose rights may perhaps enure to his benefit upon this occasion.

The advertisement for the sale of the estate of Cochran cannot conclude the plaintiffs, or be evidence that their enjoyment of the water was not adverse. Two of the plaintiffs are shown to have been subscribers to the paper ; but a person at the present day cannot be charged with knowledge of all the contents of a newspaper, merely because he is shown to be a subscriber to it. Nor is the clause in the advertisement of a character to show them that their rights were in question, even if they had read it. One half of the water of the spring came to that place, and the occupants had the use of the water there ; and it would not have been a very violent presumption on the part of one who examined the advertisement, that the right of the heirs of Cochran, in one half of the spring, was to be sold, whatever that right might be, as was afterwards done.

But if those who saw the advertisement might have understood that a sale was to be made of their rights to the water, they were not bound, upon any such notice, to attend the sale in order to protest against it. A party who is present and sees another sell and convey property to which he may assert a title, without disclosing his title, or objecting to the conveyance, may be estopped by his silence from setting up his title ; because under such circumstances his conduct would operate as a fraud upon the purchaser, if he might afterwards take from him what he had thus permitted him to purchase, without objection, from one who claimed to be the owner. And there does not seem to be any sound difference, in this respect, between a sale of real or personal property. 2 *N. H. Rep.* 167, *Runlet* vs. *Otis ;* 6 *N. H. Rep.* 521, *Morse* vs. *Child ;* 11 *N. R. Rep.* 201, *Thompson* vs. *Sanborn.* But it must clearly appear that the sale was made with full knowledge on the part of the owner, in order thus to bind him. A supposition that a conveyance is to embrace property belonging to him, when it does not in fact, will not estop him. 12 *N. H. Rep.* 128, *Marshall* vs. *Pierce.*

A party who has knowledge that another proposes to sell his land, or goods, without right, if that be all, may lawfully suppose that he will relinquish his purpose, or will not be able to find a purchaser. The maxim, *caveat emptor*, applies in full force, if the knowledge does not extend beyond that. It is no fraud in the owner not to leave his business, and go to another place, for the purpose of giving a caution.

Nor can the conversation at the auction affect the rights of the plaintiffs, although it appears that some of them were present. A. Bellows stated the facts, and said he did not know whether the plaintiffs could hold the water. Lyman, the agent for making sale, said they could not, as the repairs were in the nature of rent. But being asked whether he would give a deed with warranty, he said he should sell only the right of the heirs; and that was all that he sold and attempted to convey. His previous declaration, that the plaintiffs could not hold, could not operate to enlarge the right of the heirs; and those of the plaintiffs who were present at the time cannot be estopped from claiming what he did not sell upon that occasion. If there had been a distinct sale of all the spring, and the right to control the water at pleasure, Mrs. Bellows, who was not present, would not thereby be estopped from asserting a right to have the water flow to her house, in the manner it had been accustomed to do for near forty years; and so long as it thus flows there, she may permit those who have continued the aqueduct from that place, to continue the use of the water, even if, by reason of their having been present at the sale, they could not assert an independent right against the defendant.

In order to estop a party from asserting a title, by reason of his presence at a sale without having made any objection, the subject matter of the sale must be something in which his interest is direct and immediate. If there be an intermediate interest, upon which his depends, and that interest is not affected, he cannot be estopped.

The repairs made upon the aqueduct, without evidence

of some agreement to that effect, cannot be regarded in the nature of rent, or as an acknowledgement of a holding at the pleasure of the owner of the land through which it is laid. The fact of repairing, standing alone, is rather the assertion of a right to enter upon the land where the aqueduct is laid, for the purpose of doing an act beneficial to the party entering, than the performance of a duty to the owner of the land, or an acknowledgement of a tenancy, or use, at will under him. It must clearly be regarded as the assertion of a right adverse to the owner of the soil, were it not that in this case the owners of the Stevens place had a beneficial interest in the repair, along with the others, by reason of the use which they had of the water. But this, again, cannot show that those who made the repairs were holding the use of the water at the pleasure of him in whose land the repairs were made, and who also had the use of it. It may serve to show that they held the use, and the right to enter and repair, upon the condition of furnishing the owner of the land with a certain quantity of the water, or such quantity of water as he was accustomed to take; and the performance of the condition may be essential to the continuance of the right.

A grant, upon condition that the grantee shall perform certain acts, may be presumed from a usage of more than twenty years to exercise the right adversely, and perform the duty connected with it, as well as an absolute grant may be presumed from the exercise of a right during that period, without any performance of a duty to the owner. 2 *Aiken's R.* 266, 270, *Mitchell* vs. *Walker.* Prescriptions may be upon condition. 5 *Co. R.* 79, *Gray's Case; Cro. Eliz.* 546, 563, *Lovelace* vs. *Reynolds;* 2 *H. Black.* 224, 234, *Brook* vs. *Willet.* And there seems to be no valid reason why usage might not show a grant of a perpetual right, upon the condition of the payment of an annual sum, or rent. Such grants are legal, notwithstanding recent circumstances are showing them to be inexpedient where they embrace large tracts of land.

The subsequent negotiation between the plaintiffs and the defendant, for a purchase, by the plaintiffs, is the strongest evidence to show that the use of the water on their part had not been adverse. If this had been within twenty years of the time when the water was first taken from the Stevens place, it must, if unexplained, be regarded as evidence that the use by the plaintiffs was permissive, and not under a claim of right, because, unexplained, it would be inconsistent with such a claim. But this was more than twenty years after the water had been carried to the houses of all the plaintiffs, unless that of Buffum forms an exception. The evidence of a right, as to the rest, founded upon the presumption arising from the use, had become perfect prior to this negotiation for a purchase, and under such circumstances the mere negotiation for a purchase cannot take away the right which is shown to have existed before that time. There was no admission, in terms, on the part of the plaintiffs, that they had not a good title. The defendant had threatened to deprive them of the water unless they paid for it. They had no paper title to show, and they might well attempt to procure better evidence of their right, without destroying such evidence of title as already existed. It may be regarded as an attempt to purchase peace, notwithstanding " there had been no war." The defendant, it appears, had issued a manifesto.

But it is further objected, that the heirs of Cochran were minors at the time of his death, and that one of them had not arrived at full age when the sale was made to the defendant; and the defendant contends that no title could accrue or be shown from evidence of a use during this period, on account of this disability.

The plaintiffs answer to this, that there was the care of guardians to protect the rights of the minors, and that a prescription is not affected by the circumstance that a party against whom it operates is an infant. But the plaintiffs' claim does not rest upon a prescription. There is no pretence that the use has extended beyond the time of memory ;

and we are of opinion, that had there been no sale to the defendant, Elizabeth Cochran, whose minority continued up to the sale, might, on arriving at full age, have successfully contested the right of any of the plaintiffs, if they could not have shown a use of the water by some of them, or those under whom they claim, for a period of twenty years before her right accrued. The plaintiffs must rely upon the presumption of a grant, arising from an undisturbed enjoyment of the use of it, flowing through the land owned by the defendant, for so long a period; which may be in the nature of a prescription, except so far as time is concerned. But notwithstanding the remark of Mr. Justice Story, in *Tyler* vs. *Williamson,* 4 *Mason's R.* 402, we are of opinion that no grant can be presumed from an adverse use of an easement in the land of another, for the term of twenty years, where the owner of the land was, at the expiration of the twenty years, and long before, incapable of making a grant, whether the disability arose from infancy, or insanity. See *Gilb. Eq. Rep.* 3, *Guernsey* vs. *Rodbridges, cited* 2 *Cowen's Phil. Ev.* 383. Perhaps a disability intervening during the lapse of the term, but not extending to the termination of the period of twenty years, might not be sufficient to rebut the presumption; but it would be absurd to presume a grant, where it was clear that no such grant could have existed. And in this case a grant by a guardian, of an easement in the land of his ward, extending beyond the limit of the guardianship, is not to be presumed; because a guardian is not authorized to grant such incorporeal hereditaments out of the land of the ward. Nor can any grant from Cochran himself to Gage, Watkins or Buffum, be presumed; because there was no use by either of them for the term of twenty years before his death, and the neglect of his minor child to assert a right cannot raise a presumption of a grant by him. If, therefore, the other heirs were barred from contesting the right of the plaintiffs, because the circumstances warranted the presumption of a grant from them, a successful resistance

on the part of their co-heir, Elizabeth, might have precluded the plaintiffs from the use of the water, on account of the indivisible nature of the right to keep the aqueduct there, and to draw the water through the land in which she had an interest; at least, this might be so until some partition of the estate, by which the portion of the land through which the aqueduct passes should be assigned to the others.

The guardian of Elizabeth joined in the sale, but it was to sell her undivided interest, and we are of opinion that this does not merge the right which she had to controvert the title of the plaintiffs, and that the defendant, in virtue of the purchase of her individual share, may exercise any rights to which she was entitled.

Against her, then, some of the plaintiffs could not maintain a right, if the matter stood upon their use of the water alone, because there is no pretence that they had had a use of it for twenty years prior to the time when her right accrued and her disability existed. But these plaintiffs, with the exception of Buffum, take the water not directly from the Stevens lot, but from the land of Mrs. Bellows; and if, as before suggested, she can maintain a right to have a certain quantity of water run to her land, through the aqueduct, she may use it, or permit others to use a portion of it, or let it run to waste. The defendant, in virtue of the title of Elizabeth Cochran, has no right to object that they are not entitled to the use, so long as she permits it. And this brings us to the question whether the case shows a use of the water by her, and those under whom she claims, for the period of twenty years prior to the death of Cochran.

There is a great want of precision in fixing dates, throughout the whole testimony. Some of this may have been unavoidable, from lapse of time and the nature of the case. In some instances, the time might, undoubtedly, have been fixed with greater accuracy. When we come to enquire respecting the time that Townsley first brought the water from the Stevens place, which was the commencement of the use

on which the plaintiffs rely, the evidence is, that he moved into the house now occupied by Mrs. Bellows about the year 1796 or 1797 ; and that the water was taken from the " Stevens house," to the " Sarah Bellows house," within one or two years after he moved into it, as the witness believes. The logs were laid down by Townsley, and by Joseph Wells, who then occupied the " Mead house," to which the water was carried at the same time.    This testimony stands uncontradicted ; and, upon any reasonable construction of it, the water must have been taken to those houses prior to the year 1800.    5 *Greenl. R.* 482, *Cutts* vs. *King.*    It was carried from the house occupied by Mrs. Bellows before Townsley left it, (which was in 1812,) to Gage's, and continued on to Watkins', somewhere about that time.    This was the situation of it at or about the time Cochran purchased the Stevens lot, and thus it continued, without objection on the part of any one, up to the time of his death, which, according to the testimony, took placed in 1820 or 1821.    From the time the aqueduct was thus continued on beyond the Stevens place, those who took it, and had the use of the water, repaired the aqueduct, not only from their places of residence to that place, but beyond, to the spring.    It seems clear, then, that for more than twenty years prior to the decease of Cochran, the water had been accustomed to run to the premises now owned by Mrs. Bellows and Mead, and that the owners and occupants of those estates had the uninterrupted use of it, and had also exercised the right of making repairs on the aqueduct.    The presumption of a grant, to the extent of the use thus shown, arises before the decease of Cochran ; and the right of Mrs. Bellows and Mead to have the water flow as it had been accustomed to do, to their lands, is not impaired by the decease of Cochran, and the minority of any of his children.

It appears from the testimony, that the manner in which the water has been taken from the house owned by Mrs. Bellows, to those of Gage and Watkins, has not increased the

quantity drawn. When it was brought to that place, by Townsley, it was received into a cistern at the bottom. A similar cistern stood by the side of that, into which the surplus water was conveyed, by a tube, connecting them near the top. The logs laid to Gage's were connected with the cistern which thus received the surplus water, and took merely the quantity of water which before that time had been conveyed from that cistern, "by a board trough laying above the ground." The rights of the plaintiffs, Gage and Watkins, therefore, as they took only the surplus water at the house of Mrs. Bellows, may not be dependent upon the length of time which they have used the water, but upon the agreement which they have made with those who have owned the estate which she possesses. It is sufficient for the purposes of this case that she admits their right, and that they appear, therefore, to be lawfully possessed of what they claim. And it is for this reason that the defendant cannot object that they have not been possessed for a term of twenty years, during which no disability existed. As he has no right to prevent the water from flowing to her land, he has no right to prevent them from using it. A change in the mode and objects of the use, without increasing the quantity, is no violation of the right. 2 *N. H. Rep.* 255. Whether they can lawfully enter upon the defendant's land to repair, except as her servants, and in her right, is a question which we are not required to settle upon the present occasion. Having a right, they may join in this suit. 2 *Hopkins' Ch. R.* 416, *Reid* vs. *Gifford.*

It has been objected that a prescription must be certain, being but the presumption of a grant; and that there is here too great an uncertainty as to the quantity of water to be taken, and to be left at the Stevens house. But there may be as great certainty attained here, as there is in divers cases stated in *Com. Dig., Prescription, E,* 3, which were held to be good prescriptions.

Upon the principles which have thus been stated, the right

Watkins v. Peck.

set up by the plaintiff Buffum is not maintained, as the branch of the aqueduct to his house is not dependent upon that which runs to the house of Mrs. Bellows, but is taken directly from the land of the defendant, and his use of the water commenced but a few years before the decease of Cochran.

As to his heirs and representatives, therefore, who have come in as parties, the bill must be dismissed.

As to the other parties, let the case be committed to a master, to report what quantity of water usually flowed to the houses of Mrs. Bellows and Mead for the term of twenty years prior to the decease of Cochran, and what was used at the premises of the defendant.