Tilghman C. J.
The defendant has been indicted for a nuisance, in placing goods on the footway and carriage-way of one of the public streets of the city, and suffering them to remain for the purpose of being sold there, so as to render the passage less convenient, although not entirely to obstruct it. He admits the fact and justifies it, under the plea of his being one of the public auctioneers of the city. He contends, 1st, That what he has done is lawful, because it is necessary. 2dly, That it is authorised by an ordinance of the corporation.
1. It is true that necessity justifies actions, which would otherwise be nuisances. It is true also, that this necessity need not be absolute, it is enough if it be reasonable. No man has a right to throw wood or stones into the street at his pleasure. But inasmuch as fuel is necessary, a man may throw wood into the street for the purpose of having it carried to his house, and it may lie there a reasonable time. So, because building is necessary, stones, bricks, lime, sand, and other materials may be placed in the street, provided it be done in the most convenient manner. On the same principle, a merchant may have his goods placed in the street for the purpose of removing them to his store in a reasonable time. But he has no right to keep them in the street for the purpose of selling them there, because there is no necessity for it. This is granted to be the law with respect to a private merchant. But it is said that the case of a public auctioneer is different, because he is obliged to sell all that is brought to him, and therefore it would be difficult to find stores to contain all his goods, and because the commonwealth draws a commission on his sales, and therefore every thing which tends to increase those sales is for the public good. It is said too, that there is a necessity to have many of the articles sold at auction viewed in the open street, or at least that this kind of view is advantageous to the purchasers, and therefore will tend to promote sales. I can easily perceive, that it is for the convenience and the interest of an auctioneer to place his goods in the street, because it saves the expense of storage. But I see no more necessity in his case, than in that of a private merchant. It is equally in the power of the auctioneer and the merchant, to procure warehouses, and places of deposit, in proportion to the extent of their business. But the auctioneer has this advantage, that he may often make his sale at the house of the person who employs him. The office. *220 of an auctioneer is generally supposed to be profitable, and it is reasonable that he who takes the profit should take also the eXpeBse> for any iBterest which the public has in the business, no inference can be drawn from it. It must not be supposed that for so trifling a consideration, it was intended to barter away the convenience of a great city by implication, and it is not pretended that the auctioneers are privileged by any express act of assembly. Besides the kind of nuisance bears extremely hard upon the occupiers of the neighbouring houses. They are almost excluded from a passage to the carriage-way, and this inconvenience absolutely reduces the value of their property. Now if they are to suffer loss for the public good, they are entitled to compensation. • But no compensation has ever been thought of. A good deal has been said of ancient custom in favour of the practice now Contended for. But I know of no custom of which the court fcan take notice; none appears on the record, and even if we could take notice of such custom, as has been mentioned in the argument, it would only go to shew, that people frequently submit to a long encroachment on their rights, rather than , quarrel with the wrong-doers. But the truth is, that until the city became populous, the inconvenience was trifling. It is now so great as to be felt very sensibly. I do not think, therefore, that the defendant is better justified under his plea of custom, than under that of necessity.
The next thing to be considered is the ordinance, under which the defendant supposes himself to be protected. This ordinance (made the 18th January, 1790,) imposes a penalty on persons who place goods in the streets, ‘■‘■provided, that “ it shall not extend to the Case of goods sold at public aucu tionP Here is no express license to auctioneers, so that it is unnecessary to decide, whether the corporation has a right to license a nuisance by virtue of the general powers contained in the act of incorporation. The effect of the proviso is only this, that auctioneers shall not be subject to the penalty of that ordinance.. But if they were subject to penalties by any other law, the ordinance leaves them just where it found them. So that the main question recurs, is the act of the defendant a nuisance at common law? For the reasons which have been assigned, I am of opinion that it is, and therefore, that judgment should be entered for the commonwealth.
*221 Yeates J.
It is not controverted by the defendant’s counsel in this cáse, that the streets of the city of Philadelphia are public highways, and that the citizens in general have a right of passage therein for themselves and their carriages to their utmost extent, unobstructed by any impediment: but the temporary privation of this full right has been attempted to be justified in this instance by the necessity, or as it is called, in some of our boots, the needfulness of the case, and the defendant’s peculiar privilege as an auctioneer. On the part of the prosecution it is admitted, that a temporary partial obstruction of the streets may be justified in cases of plain evident necessity, but not where that necessity is argumentative and supposititious. Thus, when new buildings are to be erected, or old ones repaired in the city, materials and lime houses may be placed in the street, leaving room for carriages to pass; wood maybe thrown down in the street for family use, merchandise may be removed from one warehouse to another, &c. Nor has it been contended, that the necessity must be of so absolute and imperious a nature, as excludes the possibility of effectuating the object in any other mode. If the necessity be obvious, and the privilege used in a reasonable manner, so as to incommode as little as possible the neighbourhood and others, the general rule is so far dispensed with, upon principles of private as well as public convenience. These observations appear to me to be correct, and assuming them as a proper test in the present instance, We cannot say, that the defendant can shield himself on the ground of necessity. He may certainly provide stores or vacant lots as the receptacle of the articles, which he is called upon to sell by public auction, or he may vend them in the stores of the owners. It is true, that these expedients may be attended with a diminution of the profits of the auctioneer, and may be inconvenient to him, but his emoluments or inconvenience can have no weight, when they come in competition with the established rights of the community at large.
It would require much consideration to give exemption from the general law to an auctioneer, which is denied to individuals. He is a licensed monopolist, who sells goods on commission, and pays a certain tax on his sales into the state treasury. His business may be conducted with equal advantage to the public interest, whether he sells in the public streets of the city, or in private warehouses or inclosures. *222 H¿' is bound to do the duties of his station without inj uring the rights of others. He must take the rough with the smooth parts of his duty, and on no other terms can'he hold his appointment.
Much reliance has been placed on the city ordinance of the 18th January, 1790, which, it is asserted, either gives or recognises the right of an auctioneer to deposit goods to be exposed to sale at public auction, in the public street, on the footway and cartway opposite his own store, and the adjoining houses, there to remain during the sale, and for a reasonable time before and after. This does not appear to me to be the true construction of that ordinance. It changes the preexisting law only in the special instances provided for, and exempts sales by auction from the summary powers of the city magistracy. This more clearly appears from the supplement thereto enacted, in June, 1790, which abridges the former provisions, and leaves out the case of the auctioneers. It declares, that goods shall not remain in the streets above four hours, under the penalty of IS shillings. Should, however, the original ordinance be construed differently, and that it was intended to diminish the common right of passage in the street, whereby great detriment would arise to the neighbours in particular, in the occupation of their houses, I should make no difficulty in holding, that it would be repugnant to the constitution of this state, and thereby void, inasmuch as the rights of individuals would be affected and abridged for a supposed public benefit, in order to replenish the treasury, without compensation. Upon the whole, I am of opinion, that judgment should be rendered for the commonwealth.
Judgment for the commonwealth.