HART & HOYT *vs.* THE MAYOR, ALDERMEN & COMMONAL-TY OF THE CITY OF ALBANY and BROWN.

Where the right of a party is doubtful, the court will not grant an injunction to prevent an illegal interference with the same, until the right is establish-ed at law.

The court does not interfere to prevent a mere trespass, unless the complainant has been in the previous undisturbed enjoyment of the property, under claim of right, or where, from the irresponsibility of the defendants, or otherwise, the complainant could not obtain relief at law.

Any person is authorized to abate a public nuisance; but where the question of nuisance is doubtful, the court may interfere, to prevent a waste of property by persons having no interest in the question, and leave the parties to settle the question of right by indictment.

The corporation of the city of Albany has the same general jurisdiction over the pier and basin as over any other part of the territory within its char-tered limits; subject to such provisions of the act for the construction of the Albany basin as are inconsistent with that jurisdiction.

By the act of March, 1808, the jurisdiction of the city of Albany was extend-ed from the western bank of the Hudson river to the middle of the main channel.

But notwithstanding the jurisdiction of the city of Albany over the Albany basin, such basin can be regulated by the legislature, if not inconsistent with the vested rights of individuals, in the same manner as the navigable waters of the Hudson river may be regulated.

The basin is a public highway; and a single canal boat becomes a public nuisance, if it is permanently located in any particular part of the basin, or for a great and unreasonable length of time, to the exclusion of all other boats, the owners of which might find it necessary, or even convenient, to pass that way, or to locate in the same place temporarily.

No person has a right to appropriate any part of the street to his own exclusive use permanently, although such occupation may be convenient for the transaction of the particular business in which he is engaged.

Public policy requires that the body, or the individuals, clothed with the power of preventing nuisances in populous towns and crowded harbors, should not be disturbed in the exercise of that power, unless they clearly transcend their authority.

Prima facie, the person who appropriates any part of a public street or harbor to his own use exclusively, without the consent of the legislature or the municipal authorities of the place, is guilty of a nuisance.

A floating store house, permanently moored in the Albany basin, secured in its place by means of spiles or posts driven into the earth in the bottom of the basin, is prima facie a nuisance; and the court will leave the owner thereof to his legal remedy against those who remove it as such,

THE bill in this cause was filed for the purpose of restraining the corporation of Albany and their dock master, from removing from the Albany basin an ark, or floating store house, which the complainants had erected and moored therein, contrary to an ordinance of the corporation. On the filing of the bill, an ex parte order had been entered, on the certificate of an officer, for an injunction to restrain the defendants from carrying the provisions of the corporation ordinance into effect. On the coming in of the answer, a motion was made to dissolve the injunction.

*A. Van Vechten & J. L. Viele,* for the complainants.

*J. McKown & J. E. Lovett,* for the corporation.

*James King,* for the defendant Brown.

THE CHANCELLOR. Several important questions were argued by the counsel on this application, but the conclusion at which I have arrived will render it unnecessary for me to express any definite opinion upon some of the points raised on the argument. The complainants have an ample remedy at law against the defendants for any illegal interference with their property. And if their right is doubtful, as they have erected this floating store house, and moored it in the basin, in violation of an ordinance of the corporation, and after due notice that their claim to do so would be resisted, they are not entitled to an injunction until they have established their right at law. The cases in which this court has interfered to prevent a mere trespass, have been those in which the complainant had been in the previous undisturbed enjoyment of the property under claim of right, or where from the irresponsibility of the defendants, or otherwise, the complainant could not obtain relief at law. One important question in this case is, whether the store house or ark which the complainants have erected and moored in the waters of the basin is not a public nuisance. If it is so these defendants, or any other persons, are authorized to cause it to be removed. And the corpora-

tion cannot be liable for the exercise of a power which properly belongs to any member of the community. In a case where the question of nuisance or no nuisance was doubtful, this court might interfere to prevent a mere wanton waste of property by persons having no interest whatever in the question, and leave them to the more appropriate remedy of a proceeding by indictment to test the question of right. But if the erection in question is in fact a nuisance, and injurious to the commerce of the city, it was not only right but it probably was the duty of the defendants to interfere and compel its removal by any legal means within their power.

I have not had leisure to examine the subject sufficiently to express any definite opinion, whether the particular ordinance in question is authorized by their charter, or the legislative acts amending the same ; particularly that part of the ordinance which authorizes a sale of the store house, or the materials of which it is composed, to pay the expense of its removal. I have no doubt, however, of the general jurisdiction of the common council over the pier and basin, to the same extent as over any other part of the territory within their chartered limits ; subject to such of the provisions of the act for the construction of the Albany basin, as are inconsistent with those general powers. By the original charter, the city of Albany was bounded on the east by the waters of the Hudson river, at low water mark. The corporation was in express terms authorized to erect wharves and fill into the river to that extent. They were also entitled to fish in the river beyond the bounds of the city, and were entitled to the profits arising from anchorage and wharfage, at the wharf, or in the port. This boundary of the city does not appear to have been extended previous to 1808 ; but by the act of the 4th of April, 1801, (2 *R. L. of* 1801, 157, § 19,) the common council of Albany were authorized to make by-laws to prevent obstructions in the river opposite the docks and slips. This authority extended to the particular place where this store house is now moored, it then being a part of the navigable waters of the river. By the sixth section of the act of March, 1808, the easterly bounds of the city were extended to the west bounds of Rensselaer county ; the

middle of the main channel of the river. This act gave the corporation the same jurisdiction over the territory or space between the western bank of the river and the middle of the main channel, as they had before possessed within the original limits of their charter. And they still retained the right, under the act of 1801, to prevent obstructions in the river even beyond those limits.

It was supposed by the complainant's counsel, that the act of 1823, authorizing the construction of the Albany basin, had in fact made that basin a part of the canal, so as to vest the power of regulating and controlling the use thereof in the officers of the state, under the general laws relative to the canals. The act certainly does not in terms make the basin a part of the canal; although it treats it as a great public improvement, and an important appendage thereto. And I understand that the canal board have not considered themselves as having any jurisdiction over it as a part of the canal; or as having the power to regulate or control the use of its waters, or the boats or other craft navigating or lying within the same. It is a part of the public navigable waters of the state, and the legislature may regulate the navigation thereof, not inconsistent with the vested rights of individuals, in the same manner as they may regulate the use of the navigable waters of the Hudson on the opposite side of the pier notwithstanding those waters are within the bounds of this municipal corporation. The powers of the corporation may be legitimate in reference to the exercise of jurisdiction over these waters, although those powers are not exclusive. By the act of 1823, the corporation was required to signify its assent to that act within a limited time, or the act was not to go into operation. But the corporation was was not required to surrender any right or power which it could properly exercise before that time, and which was not inconsistent with the provisions of the act. By their charter, the common council were authorized to regulate the manner of constructing wharves and slips, &c. within the bounds of the city; and they had also the right to receive wharfage for all boats and watercraft lying at the wharves, or anchored in the port opposite thereto. The act of 1823,

1832.

Hart
v.
Mayor, &c.
of Albany.

which directs the manner of constructing this basin and pier, and makes a different disposition of a part at least of the wharfage, is inconsistent with the former rights and powers of the corporation. To that extent certainly the common council have, by their assent to that law, surrendered their former corporate privileges. They have also relinquished the right to exact any charge for wharfage, or anchorage for canal boats, &c. passing through the basin, or into the same, from the canal or river. Whether they have relinquished the right of exacting wharfage, &c. from the floating store house in question, or from any boat or craft which is used in navigating the basin exclusively, is a question not necessary to be decided here.

The waters of the basin, as well as the navigable waters of the river, are a public highway. Their primary use is for the passing and re-passing of boats, &c. navigating the canal and the Hudson river, and for the mooring of such craft during such reasonable time as may be necessary to discharge and receive their cargoes. But a single canal boat may become a public nuisance, by being permanently located in any particular part of the basin for a great and unreasonable length of time, to the exclusion of others which might find it necessary or even convenient to pass that way or to occupy the same place temporarily. Thus, every citizen has the right to use the public street for the purpose of passage, and to occupy any particular part of it temporarily for the ordinary transaction of business. But he has no right to appropriate any part of the street to his own exclusive use permanently, although such occupation may be very convenient for the transaction of the particular business in which he is engaged. In the case of *The King* v. *Russell*, (6 *East's Rep.* 427,) a waggoner was convicted of a nuisance for keeping one or more waggons constantly before his store house, in the public street, for the purpose of receiving and transporting goods in the usual course of his business, although there was sufficient room for two carriages to pass abreast on the opposite side of the street. And in *Rex* v. *Cross*, (3 *Campb. Rep.* 224,) Lord Ellenborough held it an indictable nuisance for a stage coachman to stand with his coach in a particular part of the street for an unrea-

sonable length of time, waiting for passengers. (*See also 3 Campb. Rep.* 230; 1 *Dallas,* 150; 1 *Serg. & Rawle,* 217; 6 *Munford,* 308; *and* 2 *Wils. Ch. R.* 87.) The question of nuisance or no nuisance, however, is always a question of fact, in relation to which the opinions of individuals will necessarily differ. It therefore becomes necessary in all populous towns and crowded harbors, to regulate such matters by police ordinances. And public policy requires that the corporation of the place, or the conservators of the port, should not be disturbed in the exercise of those powers, unless they have clearly transcended their authority. Prima facie, the person who appropriates any part of a public street or harbor exclusively and permanently to his own use, without the consent of the legislature or the municipal authorities, is guilty of a nuisance; and he subjects himself to the burthen of proving that it is no injury to the public, and that a public right has not been violated. In this case the complainants have built a floating store house, covering nearly one eighth of an acre, and have moored the same in the lower part of the basin, which is usually most crowded with boats. This ark or store house is permanently secured in its place by means of spiles or posts driven into the earth in the bottom of the basin. I have no doubt it is a very great convenience to the complainants, and those having dealings with their transportation line, in the transaction of their business. But it is evident it must give them great and improper advantages over other persons and companies transacting similar business, unless they can be permitted to build their floating store houses also. What would be the consequence of a general permission to occupy the waters of the basin in this manner, it is not necessary to predict.

It is alleged in the bill that the place where the store house is located, is in a part of the basin where it does not obstruct the free passage of boats and other craft, and where they in fact never have occasion to come in the ordinary transaction of their business. This however is denied by the answer of both the defendants, and is verified also by the oath of Brown, the dockmaster; and from its location, as exhibited on the diagram annexed to the answer, I should suppose this ark

must of necessity render it less convenient to pass with boats or vessels from the sloop lock to the upper part of the basin at those seasons of the year when the business is most pressing. At least, the complainants have failed in establishing such a perfect right to erect and maintain this float or ark within the basin, as to justify the court in interfering by injunction to protect them in the undisturbed enjoyment thereof.

The injunction must therefore be dissolved ; and the complainants must be left to their legal remedy, if they have any, to obtain satisfaction for the removal of the ark or store house, should the corporation think proper to carry their ordinances into effect.