## WINNIPISSIOGEE LAKE COMPANY v. WORSTER.

If a defect in regard to the parties to a bill in equity is apparent upon the bill, and vital to its character, the objection may be taken at any stage of the proceedings.

A defect in a bill in giving the description of the parties, or in properly setting forth their residences or places of doing business, must be taken advantage of by demurrer, or by plea in the nature of a plea in abatement.

Where the complainants were set forth as the Winnipissiogee Lake Cotton and Woolen Manufacturing Company, without stating where they were located, or whether they were a corporation or a partnership; and the defendant was set up as of Meredith, in the county of Belknap, without naming the State—*held*, that whatever defect there might be in the description of the parties could not be taken advantage of upon a motion to dismiss the bill for want of jurisdiction, after the bill had been taken *pro confesso*.

This court, as a court of equity, may grant an injunction to restrain a nuisance or a trespass, where it is made to appear that irreparable mischief will be done if an injunction is withheld.

Where the remedy at law is complete and adequate, an injunction will not be granted.

Where it appeared by the confession of the defendant that the complainants were the owners of a water fall and dam, and had claimed and exercised the right of keeping up the water for more than twenty years, without complaint; and the complainants and others had valuable mills, factories and machinery driven by the water kept up by the dam, which, with other property, would be liable to be destroyed or greatly damaged if the dam was removed; and it also appeared by the defendant's confessions that he threatened and intended to destroy or remove the dam, and that he was insolvent—*held*, that this court, as a court of equity, had jurisdiction of the case, and that an injunction might be issued to restrain the defendant from committing the acts threatened.

IN EQUITY. The bill was filed in the clerk's office on the 18th of April, 1853, and the cause entered in this court at the July term following. At that term the defendant appeared in person, and an order was made that he should answer in ninety days. That order was not complied with; and at the December term, 1853, a further order was made that the defendant should answer in ninety days, or the bill should be taken *pro confesso*. No answer was filed according to the order, and at the last July term the bill was taken as confessed. After the bill was taken as confessed, the de-

fendant moved to dismiss it for want of jurisdiction; and that question was argued by the defendant and the plaintiffs' counsel, and submitted to the court.

The bill states, in substance, that the complainants are, and have long been, seized and possessed of a water fall and mill privilege, called Folsom's Falls and Privilege, upon the Winnipissiogee river in Meredith and Gilford, in the county of Belknap, and of the lands at, near and around the same, and of the mills at the fall; that they hold their land and mills and privilege at the fall, which are situated in Meredith, on the northwesterly side of the river, by a title derived from one Nathan Batchelder, who, on the 20th of October, 1829, and for some years before and after, was lawfully seized and possessed thereof; that they hold their land and mills and privilege on the southeasterly side of said river, in Gilford, by a title derived from the town of Gilford, who were lawfully seized and possessed thereof on and prior to October 10th, 1818, and who on that day conveyed the same to one Jonathan Nelson, from and under whom the complainants, through several mesne conveyances, hold the same.

That they also hold and possess the right to flow and retain the water in the Winnipissiogee lake, to the extent to which they have flowed and retained the same, not only by the titles aforesaid, and by the uninterrupted use and enjoyment of that right for more than twenty years, but that they have derived the right from the owners of mills, dams, and the river at the outlet of the lake, who have maintained said dams and flowed the lake thereby to a greater extent than the same has been flowed by the complainants.

That many mills and a large quantity of machinery have for a long period been kept in operation at these falls by the power created by the dam across the river, and that the complainants have now at the falls a cotton factory, two woolen factories, a grist mill, two double saw mills, a machine shop, and other mills and machinery, driven by said

power; and that the Boston, Concord and Montreal Railroad have a repair shop, and Cole, Davis and Company have an iron foundery and a plough manufacturing establishment driven by water leased to them by the complainants, from said dam, from all which they receive a large amount of rents and income.

That in the months of August, September and October, 1829, the then owners of the mills and privilege, built a new dam at the falls, so as to stop the water of the river on the 20th of October of that year, and that the dam soon after became filled with water. And that the dam has ever since its erection been used, occupied and enjoyed in the same manner in which it is now; and occupied for the purpose of creating a water power for the use of said mills, and that the complainants, and those under whom they claim, have, ever since the spring of 1830, claimed, and *have*, except when prevented by the low state of the water in the river, or other accidental causes, *exercised* the right of keeping up the water of the river, by the dam, to as high a level as that to which the same is now usually held and kept, and to which the same was kept at the time of the filing of the bill, at a corresponding season of the year. That from the time of the erection of the dam, no owner of land, in which the defendant has or claims to have any interest, so far as the complainants are informed, has instituted any suit or other proceeding against the owners of the dam, or complained in regard to it, until the proceedings were had by the defendant, as hereinafter stated.

The bill further sets forth, that above the dam are two bodies of water, one called Long bay, lying directly above the dam, and the other is Winnipissiogee lake, which is separated from Long bay by a channel or part of the river, about one hundred rods in length, in which there is a descent of the water of the lake flowing into the bay; that the dam built in 1829 retains the water in Long bay; and that after the erection of the dam, the owners thereof purchased, at

great cost, of the many owners of land around the bay, the right to maintain the dam, and to raise the waters of the bay thereby upon said lands, and took conveyances thereof from the owners of land around the bay. That the dam does not, as the same has been and now is used, raise the waters of the lake higher than they had before stood, and been kept in the lake; nor does the dam flow lands owned, if any are owned, by the defendant, upon the shores of the lake, more than the same had been usually flowed; and that the water, both in the bay and lake, does not now, at the time of the filing of the bill, or usually, flow any lands lying upon or adjacent to the lake, more than they have been usually flowed for more than twenty years next before the filing of the complainants' bill.

That since the building of the dam the channel between the lake and the bay has been repeatedly deepened, at the expense of the owners of the mills, by the complainants and others, giving it an increased depth of from four to six feet, and that in consequence thereof the water of the lake now stands at a lower level than if the excavations had not been made, and generally at as low a level as it would stand if there were no dam at the falls, and the excavations had not been made.

That the complainants are ready, and, as they believe, able to establish, at any trial at law, their right, as against the defendant, to maintain and use the dam, as they do use and have used the same, and to prove that he is not injured thereby, nor any of his lands flowed or injured by the water set back or raised by the dam, to any greater extent than the complainants have a right to do.

That the defendant, pretending that he has lands lying upon or near the lake, river or bay, which are injured in consequence of the dam, continually threatens that he will destroy or remove the dam, or some part thereof, and on the 14th day of April, 1853, gave notice to the agent of the complainants of his determination immediately so to do.

And that the complainants have reason to believe, and do believe, that the defendant intends to carry his threats into execution.

And the complainants aver that the consequences of carrying the defendant's threats into execution would be to stop and prevent the operation of said mills, or seriously to retard the same, to injure the property of the complainants, and to carry away logs and lumber lying in their mill pond, and to subject the complainants to a heavy expense in repairing or rebuilding the dam, and, also, that there is danger, if the defendant should succeed in his purpose, that great loss and destruction of property might be occasioned thereby, both to the complainants and to others owning property in the river below the dam.

The complainants further aver that if the defendant has any interest in any lands which are in any way affected by the water retained or kept up by the dam, that he acquired such interest with the full knowledge of the existence and effect of the dam, and of the rights claimed by the company, and for the express purpose of making some claim or commencing some proceedings against the complainants on account of some pretended injury to such lands; and that any supposed title he may have therein is contaminated by maintenance or barratry.

The complainants also aver that they, and those from whom they derive title, have for the whole period since the spring of the year 1830, asserted and exercised the right as aforesaid, of keeping up and detaining the water by said dam.

The bill then sets forth the pretences of the defendant; that he has leases of certain lands in Tuftonborough and Wolfborough, and a certain interest in lands in Gilford and Alton. But the complainants aver that these lands are not flowed or affected by the dam more than they have been affected by the water of the lake and bay for more than twenty years last past.

That the defendant also pretends that he has a lease of some interest in land lying in the bed of the river below the dam, in Sanbornton or Northfield, and that he is about to destroy the dam, or a part of it, in order to permit the water of the river to flow naturally over the land; but the complainants aver that they have not been informed by the defendant what lands he owns or has an interest in, in said towns; that the same must be remote from the dam, with other intervening bays, ponds and dams between; and that the value of the land in the bed of the river is in no way impaired or affected by any use which the complainants make of the dam; and that they do not, at the time of filing the bill, detain or use the water of the river thereby, otherwise than as they have a lawful right to do; and as they have used the same for more than twenty years last past; and that an ample and abundant quantity of water now flows from the dam for the supply of all the mills below the dam upon the river, and for all other purposes to which the water is or has been applied.

The complainants further charge that the defendant is wholly unable to respond for the damages which would be occasioned by the execution of his threats, and that he is, as the complainants are informed and believe, wholly insolvent.

The bill states the inadequacy of the common law to render relief in the premises, and prays for an injunction to restrain the defendant from destroying or removing the complainants' dam, until he shall have established his right by a trial at law.

The bill is addressed " To the honorable justices of the superior court of judicature, holding pleas in equity, in and for the fourth judicial district." The complainants are not set up as of any place other than what may be inferred from their holding property and doing business as set forth in the bill. The defendant is set up as of Meredith, in the county of Belknap.

The bill was signed as follows: " The Winnipissiogee Lake Cotton and Woolen Manufacturing Company, by their agent, James Bell." And the following verification was made : " Personally appearing, James Bell, made oath that the charges and allegations contained in the foregoing bill are, according to the best of his knowledge, information and belief, true."

A temporary injunction was granted, *ex parte*, by one of the justices of this court soon after the filing of the bill, upon the condition that the complainants should give bonds, in the sum of $5,000, for the security of the defendant. These bonds were given. At the request of the defendant, a hearing was soon after had upon his motion for a dissolution of the injunction ; and upon an investigation of the facts stated in the bill, which were then contested, and evidence submitted upon both sides, the motion to dissolve was denied.

*Worster, pro se,* took the following positions in support of his motion to dismiss the bill for want of jurisdiction.

I. There is no plaintiff appearing on the face of the bill. The plaintiff named in the bill is the Winnipissiogee Lake Cotton and Woolen Manufacturing Company, claiming no legal existence in this State or anywhere else.

II. The bill is not addressed to any court in the State of New Hampshire, but to one which has not a legal existence in the State. There is no such court in the State as the one to whom the bill is addressed.

III. It does not appear on the face of the bill, or otherwise, that the dam, or subject matter of the bill, is within the jurisdiction of the court. It is not alleged to be within the State of New Hampshire. Story's Eq. Pl. 10, 34 ; 28 Maine Rep. 34 ; *May* v. *Parker,* 12 Pick. 34.

IV. It does not appear on the face of the bill, or otherwise, that the defendant is within the jurisdiction of this court, the bill not showing that he is in the State of New

Hampshire. Nor does it appear that the defendant's land is in this State. These should clearly appear, and the court cannot take jurisdiction without it. The bill will be dismissed if the citizenship does not appear on the face of the bill. *Dodge* v. *Perkins*, 4 Mason, 435; Story's Eq. Pl. 26, note; *Bingham* v. *Cobbett*, 3 Dall. 382; *Jackson* v. *Ashten*, 8 Pet. 148; Story's Eq. Pl. 492; *L. and R. R. Co.* v. *Stetson*, 2 Howard's (S. C.) Rep. 497.

V. The pretended plaintiff does not allege that he has not an adequate remedy in a court of law. But the allegations of the bill show that he has a perfect remedy at law, and therefore this court will not take jurisdiction. *Hart* v. *Mayor, &c., of Albany*, 3 Paige, 213. And there is no sufficient statement of the title to the thing demanded, which is essential. 1 Danl. Ch. Prac. 360, and note.

VI. The bill is not verified or attempted to be by the complainants themselves. The verification by the agent is insufficient, defective and evasive. The bill must be dismissed on this account. *Campbell* v. *Morrison*, 7 Paige, 187; *Bank of Orleans* v. *Skinner*, 9 Paige, 305; 3 Danl. Ch. Prac. 350; 1 Ves. 784; 3 Atk. 628; *Bartlett* v. *McDonald*, 13 Louisiana Rep. 44.

VII. The acts complained of as threatened by the defendant, were only acts of trespass, and a court of equity will not interfere till after the rights of the parties are settled by a trial at law. So long as the right is doubtful, a court of equity will not interfere. Angel on Water courses, 173, 174; Story's Eq. 69; 1 Dane's Abr. ch. 9; 1 Barb. Ch. Prac. 614; 2 Story's Eq. Juris. 873; *Hart* v. *Mayor, &c., of Albany*, 3 Paige, 213.

VIII. The issuing of the injunction *ex parte*, was illegal and unjust.

*Bell*, for the orators.

The remedy for the injury complained of in the bill is well established and familiar, both in this country and in

England. The case stated in the bill amounts to an attempt to commit a nuisance. If, however, it be no more than a case of threatened trespass, if the consequences would be an irreparable mischief, or if a multiplicity of suits would be required, the court would interfere by injunction.

That the threatened destruction of the dam, and diversion or drawing off of the water, is an injury in relation to which courts of equity will interfere by injunction, has been held in England from a very early period. *Robinson* v. *Lord Byron,* 1 Br. C. C. 588; *Lane* v. *Newdigate,* 10 Ves. 194; *Bush* v. *Western,* 2 Vern. Rep. 394; Prec. Chan. 530; *Finch* v. *Resbridger,* 2 Vern. Rep. 390.

This jurisdiction is exercised for the purpose of quieting long possession, whether the subject be connected with the use and enjoyment of water, or of other property. *Horson* v. *Gardnor,* 7 Ves. 305; *Mitchell* v. *Dorse,* 6 Ves. 147; *Kender* v. *Jones,* 17 Ves. 28.

So in cases where injury cannot be adequately compensated by damages. *Attorney General* v. *Nichol,* 16 Ves. 343; *Coulson* v. *White,* 2 Atk. 21.

This doctrine is equally familiar in this country. It was assumed in this State in *Watkins* v. *Peck.* 13 N. H. Rep. 360. And was recognized, and an injunction granted, in *Briggs* v. *Merrill,* Grafton, December term, 1851.

In New York there are many cases in relation to this very subject of water rights, and in relation to other cases of nuisance. *Belknap* v. *Trimble,* 3 Paige, 577; *Varick* v. *Corporation of New York,* 4 Johns. Ch. Rep. 53; *Livingston* v. *Livingston,* 6 Johns. Ch. Rep. 497; *Arthur* v. *Case,* 1 Paige, 447; *Gardner* v. *Newbury,* 2 Johns. Ch. Rep. 162. See, also, *Attaquin* v. *Fish,* 5 Met. 140; 2 Eden on Inj. 232, 259, 269, 231, note, 275; 2 Story's Eq. 204, 206, 207; 3 Danl. Ch. Prac. 1927, and cases cited.

The insolvency of the party threatening the injury is a ground upon which relief is administered, as it renders the

remedy by an action for damages worthless. 2 Story's Eq. 199; 2 Eden on Inj. 199, note; *Smallman* v. *Onions*, 3 Bro. 621, cited in *Hawley* v. *Clowes*, 2 Johns. Ch. Rep. 122.

The principles upon which the relief in such cases is to be administered, by injunction, is clearly laid down in *Hinton* v. *Earl of Granville*, Craig & Phil. Eq. Rep. 283; 3 Danl. Ch. Prac. 1927.

EASTMAN, J. As this case stands, the bill being taken *pro confesso*, after repeated appearances, the facts alleged by the complainants are all admitted to be true; and all defects in the mere form and frame of the bill, and in the proceedings prior to the confession, are waived; and the only questions that can arise upon this motion to dismiss, are these—has the court jurisdiction of the parties, and does the bill state a case coming within the principles of equity jurisprudence.

If the defect in regard to the parties is apparent upon the bill, and is vital to its character, the objection may be taken at any stage of the proceedings. Mitf. Eq. Pld. 180; Cooper's Eq. Pld. 33, 185; Story's Eq. Pld. § 236.

But if not so apparent, it may be propounded by way of plea, or it may be relied on in a general answer. Mitf. Eq. Pld. 280; Cooper's Eq. Pld. 289; Story's Eq. Pld. § 236.

And if the case made does not fall within equity jurisprudence the motion must prevail, for the court cannot assume any jurisdiction except upon cases and principles which clearly justify its interposition. Mitf. Eq. Pld. 44; Cooper's Eq. Pld. 10, 11; Story's Eq. Pld. § 34.

And first, then, as to the parties. The complainants are represented as the Winnipissiogee Lake Cotton and Woolen Manufacturing Company. There is no further description given of them in the bill, and whether they are a partnership or a corporation, or where they are located, does not appear. But this defect, if material, is not fatal. If the complainants are a partnership, the court have jurisdiction

both of their acts and their rights, in all equitable matters; or if they are a corporation established by the laws of this State, or legally doing business therein, the same kind of jurisdiction is extended to them, and over them. There is nothing in the bill which discloses any objection to the power of the court to exercise jurisdiction over them, or to entertain a bill in their favor; nor anything showing that a decree, either for or against them, might not be enforced. So far as we are to infer their residence or place of business from the bill, it would be in Belknap county, for there their property is admitted to be situated, which is the subject matter of the controversy between the parties.

If there is any defect in a bill in giving the names or description of the parties, or any neglect properly to set forth their residences or places of doing business, it must be taken advantage of by demurrer or by plea in the nature of a plea in abatement. Story's Eq. Pld. § 26, note 2, at close of the section; 1 Danl. Ch. Prac. 625. And such is the defect, if it be one, which is presented here. It is not one which interferes at all with the jurisdiction of the court.

With regard to the defendant—he is described as of Meredith, in the county of Belknap, which is a town and county of this State; a fact of which the court takes judicial notice, and of course the inhabitants dwelling therein are within our jurisdiction. But in addition to this, he appears here in court, answers to the action, and confesses that he is a resident of Meredith, in the county of Belknap, and that the charges set forth in the bill are true.

The authorities cited by the defendant to sustain the position that a defective statement of the citizenship of the parties will be fatal at any stage of the proceedings, and may be insisted on by motion or otherwise, are not applicable to a case of this kind. Those authorities apply only to cases brought in the circuit courts of the United States. As is said by Story: " There is a peculiar class of cases in America, which may give rise to an objection to the juris-

diction, founded solely upon the limited powers of the court of equity over the parties, and altogether independent of the subject matter of the bill. Under the constitution and laws of the United States, the circuit courts have, with few exceptions, jurisdiction only in suits between citizens of different States, and this has been construed to require that all the parties on each side of the record should be citizens of different States; and should be expressly averred to be so in the bill." Story's Eq. Pld. § 492.

It is the class of cases and the courts mentioned by Story, to which the authorities cited by the defendant upon this point apply, and not to a case like the one before us. And so far as the parties to this bill are concerned, there can be no doubt that the court have jurisdiction of the case.

Several objections to the bill are suggested by the defendant in his argument, which are not such as are open to him upon a motion of this kind, after the bill has been taken as confessed. Upon demurrer, or plea, they might be considered, but not after confession. The defendant objects, for instance, that the bill is not properly addressed to the court. But that is a matter of special demurrer only. He also objects to the verification. Now we do not propose to inquire to what extent, or with what degree of accuracy, bills of equity are required to be sworn to, for a defect of the kind complained of here can be of no avail, when the defendant admits that the charges of the bill are true. It is questionable whether, after such a confession, an entire want of verification would be fatal even in a bill requiring a strict formal oath by the party himself, for the confession may be treated as a substitute for the oath.

The defendant likewise contends that the subject matter of the bill is not set forth to be within the jurisdiction of the court; the bill omitting to allege the State in which the property is situated; the towns and county being named, but not the State. But this exception is invalid for the reason already stated, in regard to the residence of the defend-

ant. Had the defendant demurred or plead to the bill, these various exceptions might have been raised and considered, but they cannot be taken advantage of after the defendant has confessed all the allegations and charges of the bill.

But we pass to the consideration of the second question, which is this: Does the bill state a case falling within the jurisdiction of this court, as a court of equity? Do the facts set forth by the complainants, and confessed by the defendant to be true, make out a case for our interference by injunction? For if the court has jurisdiction of any substantial and essential part of the complaint, the bill may be sustained. *Boston Water Power Company* v. *Boston and Worcester Railroad Corporation*, 16 Pick. 512; *Livingston* v. *Story*, 9 Peters' Sup. C. Rep. 633.

A court of equity has jurisdiction in cases of rights recognized and protected by the municipal jurisprudence, where a plain, adequate and complete remedy cannot be had in the courts of common law. Cooper's Eq. Pld. 128, 129; Mitf. Eq. Pld. 112, 113. The remedy must be plain; for, if it be doubtful and obscure at law, equity will assert a jurisdiction. *Rathbone* v. *Warren*, 10 Johns. 587; *King* v. *Baldwin*, 17 Johns. 384. It must be adequate; for if at law it falls short of what a party is entitled to, that founds a jurisdiction in equity. And it must be complete; that is, it must attain the full end and justice of the case. It must reach the whole mischief, and secure the whole right of the party in a perfect manner, at the present time and in future; otherwise equity will interfere, and give such relief and aid as the exigency of the particular case may require. The jurisdiction of a court of equity is sometimes concurrent with the jurisdiction of a court of law; it is sometimes exclusive of it; and it is sometimes auxilary to it. 1 Story's Eq. Jurisprudence, § 33.

Such is a general description of the jurisdiction of a court of equity. But notwithstanding these general powers, courts of equity will not ordinarily assume jurisdiction

where the powers of the courts of common law are suffi-
cient for the purposes of justice.   And where a plaintiff
can have as effectual and complete a remedy in a court of
law as in a court of equity, and that remedy is direct, cer-
tain and adequate, a demurrer will hold.   But where the
remedy is not adapted to the particular exigency, then a
court of equity will maintain jurisdiction.   Mitf. Eq. Pld.
123 ;  Cooper's Eq. Pld. 124 ;  Story's Eq. Pld. § 473.

Wherever a plaintiff is entitled to equitable relief, if that
relief consists in restraining the commission or the continu-
ance of some act of the defendant, a court of equity ad-
ministers it by means of the writ of injunction.

Injunctions are issued to stay proceedings at law; to re-
strain vexatious suits; to restrain the alienation of prop-
erty ; to restrain waste; to restrain nuisances; to restrain
trespasses; and to prevent other irreparable mischiefs.
These are among some of the instances in which this
species of equitable interposition is obtained.   2 Story's
Eq. Jur. §§ 872, 873.

Equity also interferes to restrain the assertion of doubtful
rights, in a manner productive of irreparable damage, and
to prevent injury to third persons by the doubtful title of
others.   Mitf. Eq. Pl. 111, 112; 1 Story's Eq. Juris. § 32.

But without further investigating the general powers of
equity, we proceed to consider more particularly the defen-
dant's position, which is, that the threatened acts complained
of was a trespass merely, and that equity will not interfere in
such a case, inasmuch as there is a complete remedy at
law.

The defendant's views are, to a certain extent, correct.
An injunction will not be granted in cases of common tres-
passes, which are only contingent and temporary, and where
there is only a mere diminution in the value of the premi-
ses ; and in all cases where the court can see that adequate
compensation can be obtained at common law, courts of
equity will not interfere.   2 Story's Eq. Juris. §§ 925, 928 ;

*Dana* v. *Valentine*, 5 Met. 8; *Coulson* v. *White*, 3 Atkins 21; *Jerome* v. *Ross*, 7 Johns. Ch. Rep. 315; 3 Dan. Ch. Prac. 1859; *Hart* v. *Mayor*, &c. *of Albany*, 3 Paige 213.

But if the trespass continues so long as to become a nuisance, or if the diminution of the value of the premises amounts to irreparable mischief, a court of equity will interfere. *Coulson* v. *White*, 3 Atkins 21; *Hanson* v. *Gardner*, 7 Vesey 305; *Mitchell* v. *Dors*, 6 Vesey 147; *Courthope* v. *Mapplesden*, 10 Ves. 290; *Livingston* v. *Livingston*, 6 Johns. Ch. Rep. 697; *Gray* v. *Duke of Northumberland*, 17 Ves. 281; *Crookford* v. *Alexander*, 15 Ves. 138; *Jerome* v. *Ross*, 7 Johns. Ch. Rep. 315; *Attaquin* v. *Fish*, 5 Met. 140; *Hart & a.* v. *Mayor*, &c. *of Albany*, 3 Paige 213; *Earl Cowper* v. *Baker*, 17 Ves. 128; *Tworl* v. *Tworl*, 16 Ves. 128; 1 Paige 97.

Daniell says that an injunction will be granted, in some cases, where the parties have both legal titles and legal remedies, but irreparable mischief would be done unless they were entitled to more immediate relief than that which they would obtain at law; that it has, accordingly, been granted where the injunction amounted, in fact, to an injunction to stop a trespass; for if the court would not interfere against a trespasser, he might go on by repeated acts of damage, which would be absolutely irremediable. And he concludes his remarks, upon this particular point, by saying that unless there was a jurisdiction to prevent destructive or irreparable mischief, there would be a great failure of justice in the country. 3 Dan. Ch. Prac. 1853, 1854.

Story says that courts of equity interfere, in cases of trespasses, to prevent irreparable mischiefs, or to suppress multiplicity of suits; and that there is not the slightest hesitation, if the acts done or threatened to the property would be ruinous or irreparable, or impair the just enjoyment of the property in future. 2 Story's Eq. Jur. 928.

In *Livingston* v. *Livingston*, 6 Johns. Ch. Rep. 497, it was held by the learned Chancellor *Kent*, that injunctions

will be granted to prevent trespasses as well as to stay waste, where the mischief would be irreparable, and to prevent a multiplicity of suits. The doctrine of this case was reiterated in the case of *The New York Printing and Dying Establishment* v. *Fitch,* 1 Paige 97. And in *Attaquin* v. *Fish,* 5 Met. 140, it was also held that courts, with full chancery powers, might issue injunctions to restrain trespasses.

The books also clearly show that injunctions will be granted to prevent the diversion of streams from mills, the back flowage on mills, and the pulling down of the banks of rivers and thereby exposing adjacent lands to inundation, from which the banks had protected them. *Robinson* v. *Lord Byron,* 1 Browne's Ch. Rep. 588; *Lane* v. *Newdigate,* 10 Ves. 194; *Agar* v. *The Regent's Canal Company,* Cooper's Eq. Rep. 77; *Finch* v. *Resbridger,* 2 Vern. 390; *Bush* v. *Western,* Prec. in Ch. 530; *Belknap* v. *Belknap,* 2 Johns. Ch. Rep. 463; *Van Bergen* v. *Van Bergen,* 2 Johns. Ch. Rep. 272; *Arthur* v. *Case,* 1 Paige 447: *Varick* v. *Corporation of New York,* 4 Johns. Ch. Rep. 53; *Van Bergen* v. *Van Bergen,* 3 Johns. Ch. Rep. 282.

In *Gardner* v. *Village of Newburgh,* it was held that chancery has concurrent jurisdiction with courts of law, in cases of the diversion of streams, and that a court of equity may issue an injunction to prevent the obstruction of an ancient water-course, though the plaintiff has not established his title at law.

In *Belknap* v. *Trimble & a.* 3 Paige 577, where the complainants were the owners of mills which depended upon a particular use of the waters of a pond at the head of the stream, and they had been in the uninterrupted use and enjoyment of the water, in a particular manner, for more than twenty years; it was held that the court of chancery had jurisdiction to establish their right to such use of the waters of the pond, and to restrain the defendant from disturbing them in such enjoyment. In closing his opinion upon the

case, the learned chancellor makes these remarks: " The defendant probably supposed himself in the possession of a legal right to destroy the complainants' mills, by interrupting the use of the water; and he hoped to be able to avail himself of it in such a manner as to make money out of their necessities. He interrupted them in the enjoyment of their rights, when it could not benefit him in any other way than by compelling them to buy their peace. Under such circumstances, if a party mistakes his legal rights, he has no particular claim to the favor of the court."

The solvency of a party committing the injury is also an important consideration upon the question whether an injunction shall be granted or not. Courts have interfered and granted injunctions where, from the irresponsibility of the defendants, relief could not be obtained at law. *Hart & Hoyt* v. *Mayor, &c. of Albany*, 3 Paige 213; 2 Story's Eq. Juris. § 916; *Hawley* v. *Clowes*, 2 Johns. Ch. Rep. 122.

The office of an injunction is either to require a party to do a particular act, or to restrain him from doing any such act. The process is, however, rather preventive than restorative. It seeks to prevent a meditated wrong more often than to redress an injury already done; and the most common sort of injunction is that which operates as a restraint upon a party in the exercise of his real or supposed rights. 3 Dan. Ch. Prac. 1809; 2 Story's Eq. Juris. §§ 861, 862.

The general principle deducible from the authorities appears to be, that a court of equity will not interfere in cases of nuisances, trespasses and the like, where the parties can settle their rights in a court of law, unless it shall appear that irreparable mischief will be done by withholding the process. But where it is shown that great and irreparable injury would follow, unless the party were entitled to more immediate relief than he could obtain at law, and that the action at law would give no protection against future acts, and the remedy by a multiplicity of actions, would furnish no substantial compensation, an injunction will be granted.

In cases of gross trespass, the principle is, not that the law does not give a remedy, but that it does not give a complete remedy, and that before the remedy can be applied irreparable mischief will be done.

There are cases where the court must, undoubtedly, exercise its discretion in granting or withholding a preliminary injunction. The degree of inconvenience and expense to which granting the injunction would subject the defendant, in the event of his being in the right; and, on the other hand, the nature of the injury which the plaintiff may sustain, in the event of his complaint turning out to be well founded, and the court refusing to interfere, are matters to be considered. And if the injunction is granted, the court will see to it that proper restrictions and conditions are attached to it, so that the defendant may suffer no wrong, in the event of its finally appearing that he is in the right.

This court, as a court of equity, has broad powers in regard to the issuing of injunctions. Express authority is given by statute to grant writs of injunction, whenever the same shall be necessary to prevent injustice. Rev. Stat. ch. 171, § 7; *Piscataqua Bridge* v. *N. H. Bridge & a.* 7 N. H. Rep. 55; *Watkins & a.* v. *Peck,* 13 N. H. Rep. 360.

The principles which we have endeavored to state will, we think, be found to be uncontradicted by authority. If there are cases which appear to conflict with some of the views expressed, it will be found, upon close examination, that they are decisions made by courts with limited equity powers; but wherever the power is as extensive as that possessed by this court, as a court of equity, the positions will be found to be fully sustained.

Applying these principles to the facts stated in this bill, and confessed by the defendant to be true, and how does the case stand? The complainants' charge that they are seized and possessed of the water fall and privileges set up in their bill, and of the lands around the same, and of the mills at the fall; and that they also hold and possess the

right to flow the lake and bay to the extent to which they have flowed the same. That they and their grantors have, ever since the spring of 1830, being more than twenty years, *claimed* and *exercised* the right of keeping up the water by the dam, and that no owner of land in which the defendant claims to have an interest, ever complained in regard to it, until proceedings were had by the defendant, in April, 1853. That the dam does not, as the same has been used and is used, raise the waters higher than they had before stood and been kept, nor does it flow lands owned, if any are owned, by the defendant, more than they have been usually flowed for more than twenty years.

The bill further alleges that the complainants are able to prove that the lands of the defendant, if any he has, are not flowed by the water's being set back or raised by the dam to any greater extent than the complainants have a *right* to do. Thus the complainants, by their bill, show a good title to their property and the rights which they exercise.

They then set forth that they have at the falls a cotton factory, two woolen factories, a grist mill, two double saw mills, a machine shop, and other mills and machinery, driven by the water power made by the dam, and that the Boston, Concord and Montreal Railroad have a repair shop, and Cole, Davis and Company an iron foundry and a plough manufacturing establishment, driven by water, leased to them by the complainants, from the dam; and they allege that the defendant continually threatens that he will destroy or remove the dam; and, on the 14th of April, 1853, four days before the filing of the bill, gave notice to the agent of the complainants of his determination immediately so to do; and that the complainants have reason to believe, and *do* believe, that the defendant intends to carry his threats into execution. And they aver that the consequence of carrying the defendant's threats into execution would be to stop and prevent the operation of their mills or seriously retard the same, to carry away their logs and lum-

ber, and subject them to a heavy expense in repairing or re-building the dam. And, also, that there is danger that great loss and destruction of property might be occasioned thereby, both to the complainants and to others owning property in the river below the dam. They also allege that whatever rights the defendant may have, if he has any, that they have been obtained for dishonest purposes; and they likewise charge that the defendent is insolvent.

Now how these allegations and charges would have appeared, had the defendant answered the bill and full proof been taken, is not for our consideration at this time. As the case stands before us, the defendant has admitted the averments and charges of the bill to be true. He has confessed that the complainants have a good title to the property; have a right to raise the water by the dam as they have raised it; that he has threatened to remove the dam, or a part of it, and intends to carry that threat into execution; and that the consequence of such a removal would be the destruction of a large amount of property belonging to the complainants and others. And he has also admitted that whatever rights he has are contaminated by barratry and maintenance, and that he is insolvent.

Upon these confessed facts, the court entertain no doubt of their jurisdiction over the case, and of their power to grant an injunction according to the prayer of the bill.

They entertain no doubt, either, that a preliminary injunction was properly granted upon the complainants' bill and affidavits. The defendant contends that the issuing of the injunction, *ex parte*, was illegal and unjust. But that is not a matter to be considered now, after the defendant has confessed all the charges in the bill to be true. The injunction was issued under the express authority given by statute, with the precaution that large bonds should be given, so that the defendant's rights could not, in any event, suffer. And if this power were not conferred upon some member of this court, or upon some other person clothed

with the exercise of equitable powers, there would be great danger that immense wrongs would, at times, be perpetrated.

But even if the proper time to argue the propriety of granting an injunction *ex parte*, is upon a motion to dismiss a bill for want of jurisdiction, it would certainly seem to be a sufficient answer to the argument, that all the facts stated in the bill are subsequently admitted to be true, and that the whole court are of opinion that the defendant should be enjoined against doing what to them appears to be irreparable mischief.

The motion to dismiss the bill for want of jurisdiction, is denied.