THOMAS FITCH vs. THE NEW YORK, PROVIDENCE & BOSTON RAILROAD COMPANY.

New London Co., May T., 1890. ANDREWS, C. J., CARPENTER, LOOMIS, SEYMOUR and J. M. HALL, Js.

The interest which a railroad corporation acquires in land taken by it for railroad purposes by condemnation is, and from the nature of the uses must be, a right to the occupation of it, exclusive in point of user and practically unlimited in point of duration. While for many purposes it is substantially equivalent to the fee, it is not the fee. Possession under it would not be adverse to the reversioner.

If such land adjoins a highway the railroad company may do anything in the highway which any occupier of such lands might lawfully do, or anything, not depending on the ownership of the fee, which the owner of such land might himself do.

The defendant railroad company was using certain lands adjoining a highway, which it had taken by condemnation, for the purpose of building thereon the approach to a bridge over a river, and was using a portion of the highway adjoining the land for sundry purposes of temporary convenience in constructing the work. Held that this use was analogous to the use of a portion of the highway adjoining a city lot as a convenience in erecting a building upon the lot; such acts being lawful, and the only limitation upon them being that they must not be unnecessarily or unreasonably undertaken or prolonged.

Such acts offend, if at all, against the easement, which belongs to the public, and not against the reversion, which belongs to the owner of the fee. They might be nuisances as interfering unreasonably with public travel, but they would not be trespasses for which the reversioner would have a right of action.

[Argued May 28th,—decided September 12th, 1890.]

ACTION for a trespass by the unlawful entry upon and use by the defendant railroad company of a piece of land in which the plaintiff claimed an equitable interest with possession; brought to the Superior Court in New London County and tried to the jury before *Torrance, J.*

The plaintiff in his complaint, after describing the land in question as bounded on one side by the Thames river, and averring that he was the owner of an equitable interest in it and in possession as a lessee, made the following allegations :—

" The defendants are about constructing a bridge across said river from a point near the plaintiff's said lot, and in the prosecution of this design, and preparatory to the building of said bridge, are wrongfully taking, occupying and using the plaintiff's said land ; and are excavating and driving piles into the same ; and have erected thereon structures of wood and iron for use in constructing some of the piers of said bridge, and now threaten to continue said work and to erect on said lot derricks and other and larger structures of wood, iron and stone, which obstruct the plaintiff's use and occupation of said land, and are an annoyance to him, and will, if maintained, wholly destroy and render valueless to the plaintiff the use of said lot, and are already an obstruction and a nuisance to him in the enjoyment of such use. The land which the defendants are thus using has never been lawfully condemned and taken, and such use is in defiance of the plaintiff's will and permission and without any lawful right."

The jury returned a verdict for the defendants and the plaintiff appealed on the ground of error in the charge of the court. The court made the following finding of the facts on the appeal :—

The land upon which the trespass alleged was committed as described in the plaintiff's original complaint, is a strip of land on Winthrop's Neck, in the city of New London, forty feet in width and about two hundred feet in length, and extending from what was claimed to be the termination of Eighth street into the waters of the Thames, and is bounded on the north by lands alleged to have been condemned by the New York, Providence & Boston Railroad Company ; east by the river Thames ; south by lands which, during the trial, were known as lots 104 and 60 ; west by the alleged termination of a street called Eighth street. This description of the *locus in quo* was subsequently amended on motion of the plaintiff so as to include the lands on the north of the forty-foot strip alleged to have been condemned by the railroad company ; and also lands south of said strip known as lot 104 and the north portion of lot 60, as laid down upon

the old Winthrop map, so-called, in the office of the town clerk of the town of New London, and which is made part of the finding in this case, as also the record of the condemnation by the railroad company above referred to.

Upon the trial of the case to the jury the plaintiff claimed, and offered evidence to prove, that on the day named he was in lawful possession of the tract of land described in the amended complaint, excepting of that portion which lies north of the forty-foot strip, which portion had been so condemned by the railroad company; and that on that day the defendants unlawfully entered upon the tract so possessed by him, or some portion thereof, and committed a trespass thereon.

The defendants, admitting an entry upon that portion of the land included in the forty-foot strip, claimed and offered evidence to prove that the same was a portion of Eighth street, and a public highway of the city of New London. They also claimed, and offered evidence to prove, that one Bragaw was the owner and in the exclusive possession and occupancy of lots 104 and 60, being next south of said highway, and that whatever acts were done by them were with his license and permission.

The plaintiff claimed and offered evidence to prove that the alleged highway had never been, and was not at the time of the alleged trespass, a public street, but was in the plaintiff's possession on said day; and he asked the court to instruct the jury that, even if the same was a public street, and the plaintiff was ousted of possession by Bragaw on the south, nevertheless the plaintiff was in possession on said day of that half of the alleged street adjoining the lands which had been condemned.

The court, as to this part of the case, charged the jury as follows:

"Now, gentlemen, was he in possession of this strip at the time of the trespass? At this time, you will remember, the railroad company had taken the land by condemnation on the north side of the road. I charge you that that gave to the railroad company a right to one half of that highway,

(if it was a highway,) subject to the public use. And if you find that Mr. Bragaw was in the exclusive occupancy in the sense which I have already explained to you of the land on the south side up to Eighth street, he also had a right in that street to the center of the way, subject to the public use, unless you shall find, according to the claim of Mr. Fitch, that he, Fitch, had so thoroughly excluded the public and was so thoroughly occupying it as to make it his own."

At the close of the charge, Mr. Tanner, one of the counsel for the plaintiff, said : " In order that your honor may understand our claim, I ask that it be stated that even if the trespass was made in the roadway, and it is found that it was a public way, if the jury find that Mr. Fitch was in possession of the land abutting on the roadway, and the trespass was on that part of the roadway abutting on such land, it will still be a trespass." The court : " I think I so stated. I intend you to understand it as Mr. Tanner has stated. If you find that Mr. Fitch was in possession of any part of the land adjoining this highway, possession in the sense I have explained, and should also find that that was a highway, then of course Mr. Fitch would be entitled to every use of that highway not inconsistent with the public use ; and if anybody used it, put it to a use that was different from what the public would have a right to use it for, Mr. Fitch, in that case, would be entitled to recover for that."

*J. Halsey* and *A. P. Tanner*, for the appellant.

The gist of the controversy in the court below was as to the plaintiff's possession of the premises at the time of the alleged trespass, and particularly of that portion of them which lies next to land condemned by the defendants for railroad purposes and by them claimed to be a highway, and, incidentally, of the condemned land itself. The plaintiff requested the court to instruct the jury with reference to the part claimed as a highway that, if it was such in fact, he was nevertheless in possession on the day in question of at least that half of the alleged street adjoining the condemned land and therefore entitled to recover; but the court in-

structed the jury that the occupation of the adjoining land, under the right of eminent domain, gave the defendants a right to one half of the alleged highway, if it was a highway, subject to the use of the public, and so in effect held that the defendants had ousted the plaintiff of his possession and become subrogated to all his rights in the premises. This was clearly erroneous. The defendants acquired no rights beyond the limits of the land condemned. Their interest is that of a mere easement in the part condemned. They have a right of way over it to be sure, and, incidentally thereto, such other rights as are necessary to the effective construction and operation of the road; but the fee and all property rights above and below the surface, not inconsistent with the proper enjoyment of the servitude, belong exclusively to the owner of the soil. He may bring ejectment and recover possession of the land, subject, of course, to the easement, and he can maintain trespass for any acts done to the land not necessary for the enjoyment of the franchise which would be an actual injury if the land was not covered by the way. Lewis on Eminent Domain, §§ 599, 647; 5 Wait's Actions & Defenses, 288 to 291, and authorities there cited; Angell on Highways, §§ 301 to 306; *Woodruff* v. *Neal*, 28 Conn., 165, and authorities there cited. If the acquisition for railroad purposes had been by purchase instead of by condemnation, yet the description given of the land condemned would have conveyed no interest in the alleged street. Angell on Highways, §§ 314 to 318. The plaintiff was, therefore, in the constructive possession of the condemned land, and as owner of the soil had the right to, at least, one half of the alleged highway, if it was a highway.

But it may be contended that the damaging effect of the judge's charge in the particular complained of, was entirely obviated by his subsequent remarks to the jury in response to a suggestion made by one of the counsel for the plaintiff, and the matter of possession left as a question of fact to the jury. A comparison of the language, however, shows no withdrawal or modification of the view previously expressed, and the jury, unable to discriminate between the legal effect

of constructive possession by an owner of the soil and actual possession by the beneficiaries of the easement, must naturally have inferred that the defendants were in exclusive possession of the territory on the north of the alleged highway, and occupying adversely to the plaintiff's interests.

*A. Brandegee* and *S. Lucas*, for the appellees.

ANDREWS, C. J.   The record presents only a single question :—Was that part of the charge given by the trial judge to the jury recited in the finding erroneous ?   The finding shows that it was conceded on the trial that the defendant railroad company was in the possession of the land which it had taken under proceedings condemning it for railroad purposes ; and the verdict has settled that the forty-foot strip, to which the condemned land adjoined on the north, was a public highway, part of Eighth street, so called, in New London.

The plaintiff insists that the charge was erroneous, because, he says, it in effect told the jury that the railroad company, having taken the land adjoining the highway for railroad purposes by condemnation proceedings, acquired thereby the same rights within the highway that a purchaser of that land by an absolute deed would have acquired, and that the possession by the railroad company of the land so taken was an ouster of the plaintiff therefrom.

The language used by the judge is not quite as broad as the argument of counsel.   His language was that the taking of the land on the north side of the highway by condemnation gave the railroad company " a right to one half of the highway subject to the public use."

If this language means just what the plaintiff's counsel say it means, we should be inclined to think that it was erroneous.   The interest, or estate, which a railroad corporation acquires in land taken by it for railroad purposes by condemnation is, and from the nature of the user must be, a right to the occupation of it, exclusive in point of user, and practically unlimited in point of duration.   This right,

while for many purposes it is substantially equivalent to the fee, is not the fee. Possession under this right would not be adverse to the reversioner.

But we do not understand the language of the judge, when the whole of it is read, to mean quite what the plaintiff argues. Any charge of the court claimed to be erroneous must be considered, not in the abstract, but with reference to the actual facts in the case.

A railroad company in the occupation of land taken by it for its purposes, if such land adjoins a highway, may do anything in the highway which any occupier of such land may lawfully do, or anything—not depending on the ownership of the fee—which the owner of such land might himself do. Any occupant of land abutting on a highway may do many things in the highway by reason of such occupancy. Such an occupant would undoubtedly have the right of free ingress and egress, and for that purpose might grade the surface of the highway, if he did not thereby render the surface unfit for public travel. He might ordinarily construct a sidewalk, set hitching posts, place a stepping stone to enable passengers to enter or alight from a carriage more readily, or set out shade trees. It appears that the defendant railroad corporation was using the land adjoining the highway to build thereon the approach to the bridge over the Thames river. This use is closely analogous to the occupation of lots in a city, where it is allowable, in the building or repairing of houses, to excavate within the line of the highway to lay down the foundations; or for the purposes of water pipes or drains or sewers; or to place building material in the street; and the only limitation on these acts is that they must not be unnecessarily or unreasonably interposed or prolonged. *O'Linda* v. *Lothrop*, 21 Pick., 292; *Shepherd* v. *Baltimore & Ohio R. R. Co.*, 130 U. S. R., 433; *Hundhausen* v. *Bond*, 36 Wis., 29; *Clark* v. *Fry*, 8 Ohio St., 358; *Wood* v. *Mears*, 12 Ind., 515; *Commonwealth* v. *Passmore*, 1 Serg. & Rawle, 217; *People* v. *Cunningham*, 1 Denio, 524; *St. John* v. *Mayor etc. of New York*, 6 Duer, 315. Within the same reasons would be the placing of derricks or staging in the street to aid in build

ing. *The King* v. *Russell*, 6 B. & C., 566 ; and the opinion of Lord ELLENBOROUGH in *Rex* v. *Jones*, 3 Camp., 228.

It is not wholly clear what acts of the defendant were proved or claimed to have been proved on the trial. The finding is that the plaintiff offered evidence of, and claimed to have proved, a trespass on the piece of land in question, and that the defendant admitted an entry thereon. None of the acts charged in the complaint are such as affect the fee. They are all of a temporary nature and such as affect only the present possession. They are alleged to be done in and about the building of the bridge over the Thames river, and the language implies that when the bridge is complete the acts will cease. These are acts that offend if at all against the easement, which belongs to the public, not against the reversion, which belongs to the owner of the fee. They might be nuisances because they unreasonably interfere with public travel, but we do not think they would be trespasses for which the reversioner could have any action. In ordinary cases any unlawful entry on the land of another is a trespass; but where the locus in quo is a highway, an entry upon it is not a trespass. In such case it is incumbent on the plaintiff to prove something more than a mere entry. He must in the first instance prove such facts and circumstances as show that the act was unlawful, or if lawful, that it was done in an improper manner. *Munson* v. *Mallory*, 36 Conn., 165.

Reading the whole of the charge in the light of the facts of the case we think it was not erroneous.

The plaintiff omits the explanatory portion of the charge. When that is read in connection with what preceded, the instruction becomes precisely what counsel had requested. The judge says he intended to state the law in this respect just as counsel had requested. Counsel had asked " that it be stated that even if the trespass was made in the roadway and it is found that it is a public way, if the jury find that Mr. Fitch was in possession of the land abutting on the roadway and the trespass was on that part of the roadway abutting on said land, it will still be a trespass." In re-

sponse to this request the judge said he thought he had so stated, and then he said to the jury that he intended them to understand it just as counsel had stated. And this direction to the jury followed the part of the charge to which objection.is made. It is difficult to see how the request of counsel could have been more fully complied with. Clearly the plaintiff is in no situation to take any exception.

In an action of trespass to land the plaintiff, to entitle himself to a verdict, must show either an actual exclusive possession, or a title in connection with the fact that no one else was in the actual exclusive possession. *Church* v. *Meeker*, 34 Conn., 422. The plaintiff could not have been in the exclusive possession of the locus because it was a public highway. He did not show any title to the soil within that highway other than such as might be implied from his ownership of the adjoining land which had been taken by the railroad company. The condemnation proceedings are made a part of the finding. From these proceedings we learn that one Ebenezer Morgan was the sole legal owner of the condemned land. If Mr. Fitch had any equitable interest in that land it is not stated. We have searched the entire record in vain to ascertain any title to the *locus in quo* by virtue of which the plaintiff can maintain this action.

There is no error in the judgment appealed from.

In this opinion the other judges concurred.